621 A.2d 1197

Mary E. POWELL, As Administratrix of the Estate
of Vincent E. Powell, Deceased, Appellant,

v.

David A. DRUMHELLER and Commonwealth of Pennsylvania,
Department of Transportation and Winner Ford of Newark
and Calderon Bros., Inc., Appellees.

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1992.

Decided Feb. 19, 1993.

Reargument Denied April 21, 1993.

Esther L. Hornik, for appellant.

John P. Capuzzi, Deputy Atty. Gen., for appellees.

Before DOYLE, COLINS, PALLADINO, McGINLEY, SMITH, PELLEGRINI and FRIEDMAN, JJ.

PELLEGRINI, Judge.

Mary E. Powell (Powell), as Administratrix of the Estate of Vincent A. Powell, Deceased, appeals an order of the Court of Common Pleas of Chester County (trial court), sustaining the preliminary objections of the Pennsylvania Department of

Transportation (DOT) and dismissing Powell's amended complaint [1] because DOT was insulated from liability due to intervening acts of a third party.

Powell brought a wrongful death and survival action against DOT and other defendants, jointly and severally, following the death of Vincent Powell when another driver collided with Vincent Powell's vehicle. According to Powell's amended complaint,[2] the accident occurred when the other driver, David Drumheller, attempted to pass another vehicle and collided with Vincent Powell's oncoming automobile, killing him. The amended complaint alleged that the accident was caused by Drumheller's negligent operation of his vehicle and by operating it under the influence of alcohol. (Paragraphs 24 and 25). Further, the amended complaint alleged that Drumheller later pled guilty to vehicular homicide and driving under the influence of alcohol in connection with the incident.

Powell alleged that DOT was also negligent, contending that DOT created a dangerous condition over one of its highways which it had a statutory duty to maintain. Powell further alleged that DOT had a duty to mark streets it controlled and, more specifically, that DOT was negligent by:

(a) failing to make a centerline delineating the directions and lanes travel;

(b) failing to make a centerline designating a no passing zone;

(c) failing to have a regulatory sign (Do Not Pass) restricting passing;

(d) setting a speed limit that was too high for the available sight distance (stopping);

1. The trial court's order of April 18, 1991, sustaining DOT's preliminary objections, concludes simply that "Plaintiff's Complaint is DISMISSED." The record indicates, however, that other defendants remain in this action.

2. Other named defendants include the bar which allegedly served Drumheller alcohol; Winner Ford, the car dealership which allegedly sold to Drumheller the vehicle he was driving when the accident occurred; and his parents, David and Nancy Drumheller, who allegedly permitted him to drive, knowing he was an incompetent driver and dangerous to the public.

(e) setting a speed limit that was too high for the available sight distance (passing);

(f) failing to have a shoulder or lateral cleared area to provide room for an emergency maneuver or to provide an escape route;

(g) failing to maintain the shoulders of the road by allowing vegetation to overgrow to the edge of the pavement;

(h) failing to construct and maintain the site where the accident occurred in such a manner as to protect travelers from dangers which by the exercise of normal foresight, careful construction and reasonable inspection should have been anticipated and avoided.

Paragraph 27 of amended complaint.

DOT filed preliminary objections [3] in the nature of a demurrer to those allegations on the grounds that as a commonwealth party, sovereign immunity insulated it from liability because a criminal act of a third party caused Vincent Powell's death. The trial court agreed, dismissing Powell's argument that suit may proceed against DOT under the real estate, highway and sidewalk exception to sovereign immunity set forth at 42 Pa.C.S. § 8522(b)(4).[4] The present appeal

3. The defense of sovereign immunity is an affirmative defense that should have been raised by new matter in DOT's answer to Powell's complaint, not in preliminary objections. *Wurth v. City of Philadelphia,* 136 Pa.Commonwealth Ct. 629, 584 A.2d 403 (1990). Pa.R.C.P. 1030. However, Powell waived the propriety of raising an affirmative defense in preliminary objections by not filing preliminary objections to DOT's preliminary objections. Pa.R.C.P. 1032. *Wurth; Gallagher v. City of Philadelphia,* 142 Pa.Commonwealth Ct. 487, 597 A.2d 747 (1991). Because it is waived, we will address the issue as to whether sovereign immunity bars Powell's claim against DOT, even though it was improperly raised in preliminary objections. *Gallagher; Paz v. Commonwealth, Department of Corrections,* 135 Pa.Commonwealth Ct. 162, 580 A.2d 452 (1990).

4. The trial court held that DOT could not be held liable as a matter of law because:

[t]he Tort Claims Act, specifically 42 Pa.C.S.A. § 8541, precludes any imposition of liability on the Commonwealth for the acts of a third party. *Chevalier v. City of Philadelphia,* 516 Pa. 316, 532 A.2d 411 (1987) and *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987). Therefore, this court must sustain [DOT's] preliminary objections and dismiss the complaint.

followed, with Powell raising the issue of whether sovereign immunity bars her action against DOT.[5]

DOT contends that Drumheller's conduct is such that it is an "act of others" that precludes imposition of liability on it under 42 Pa.C.S. § 8522(b)(4).[6] Whether commonwealth parties and local agencies are immune from liability where the conduct of a third party is alleged to have resulted in injuries to the plaintiff has been a subject that has caused the courts of this Commonwealth much difficulty.

After a number of decisions from this court generally holding that local agencies in certain circumstances could be held liable for their negligent acts, even though criminal acts of third parties intervened,[7] our Supreme Court, in the seminal *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d

Trial court order, April 18, 1991, n. 2. While the trial court cites 42 Pa.C.S. § 8541, which is the general immunity provision for local governments, the corresponding section for commonwealth parties is 42 Pa.C.S. § 8521.

5. This court's scope of review of a challenge to the sustaining of preliminary objections in the nature of a demurrer is well settled. The question presented by the demurrer is whether on the facts averred, the law states with *certainty* that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970). For such review, a court must accept as true all well-pleaded allegations and material facts averred in the complaint, as well as all reasonable inferences deducible therefrom. *Wurth, supra.* Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 465 A.2d 1231 (1983).

6. § 8522. **Exceptions to sovereign immunity.**

. . . . .

(b) Acts which may impose liability.—The following acts by a commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

(4) Commonwealth real estate, highways and sidewalks.—A dangerous condition of commonwealth agency, real estate and sidewalks . . . and highways under the jurisdiction of a commonwealth agency, except conditions described in paragraph (5). . . .

42 Pa.C.S. § 8522.

7. *See Allentown State Hospital v. Gill*, 88 Pa.Commonwealth Ct. 331, 488 A.2d 1211 (1985); *Yellen v. Philadelphia State Hospital*, 94 Pa.Commonwealth Ct. 576, 503 A.2d 1108 (1986).

1118 (1987), a case involving a local agency, first addressed this issue. *Mascaro* involved two juvenile offenders who escaped from a juvenile detention center. Both escapees immediately proceeded to burglarize the Mascaro home, rape and physically abuse the mother and daughter in the presence of the rest of the family. The husband/father, unable to live with the tragedy, committed suicide. The family brought suit against the local agency, claiming negligent maintenance of the detention center pursuant to § 8542(b)(3) [8] of what is commonly called the Political Subdivision Tort Claims .Act. Although concluding that the allegations of the complaint fell within the real property exception, and that the cause of action would exist if the local agencies were private parties, the Supreme Court found that the liability was precluded because of the language of 42 Pa.C.S. § 8541.[9] Our Supreme Court held that acts of the local agency or its employees which make the property unsafe for the purposes for which the property is regularly used are acts to which liability attaches, but since "[a]cts of others ... are specifically excluded in the general immunity section (42 Pa.C.S. § 8541), and are nowhere discussed in the eight exceptions," 514 Pa. at 362, 523 A.2d at 1124, the local agency was not held liable.[10]

**8.** 42 Pa.C.S. § 8542(b)(3) provides that liability may be imposed on a local agency for:

The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. Note that the real property exception for local governments does not contain the "dangerous condition" language as 42 Pa.C.S. § 8522(b)(4) does for commonwealth parties.

**9.** 42 Pa.C.S. § 8541 provides:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

**10.** The Supreme Court also reasoned that such a holding would be "consistent with the Legislative determination that the criminal acts, actual fraud, actual malice or willful misconduct of its *own* agency or employees acting within the scope of their duties are not the subject of suit or liability. 42 Pa.C.S. § 8542(a)(2), *supra*. It would be incongruous, indeed, to shield the city or Center from liability for the crimes of

Quoting language in *Chevalier v. City of Philadelphia*, 516 Pa. 316, 532 A.2d 411, 413 (1987), a case involving a local agency which held that the *Mascaro* rationale precludes third-party liability on the Commonwealth or its local agencies, this court, in *Moore v. Commonwealth, Department of Justice*, 114 Pa.Commonwealth Ct. 56, 60, 538 A.2d 111, 113 (1988), held for the first time in a case involving the Commonwealth that:

The General Assembly has not waived the immunity of the "Commonwealth or its local agencies for harm caused by [criminal acts of] third persons in any of the [immunity] exceptions." [11]

its agents and employees, but impose liability for the crimes of others. We believe, given the legislative scheme of immunity, that the Act consistently excludes all criminal acts from liability, including the acts of criminals ... who take advantage of defects in municipal property to commit their own crimes." *Mascaro*, 514 Pa. at 363–64, 523 A.2d at 1124. *See also Dickens v. Horner*, 531 Pa. 127, 129, 611 A.2d 693, 695 (1992). Unlike local agencies, commonwealth parties are obligated to reimburse employees, even if engaged in willful misconduct, as long as they were acting within the scope of their employment. 42 Pa.C.S. § 8525. *LaFrankie v. Miklich*, 152 Pa.Commonwealth Ct. 163, 618 A.2d 1145 (1992).

11. *Moore* held that a commonwealth party could not be held liable for criminal conduct of third parties based on the *Mascaro* rationale that 42 Pa.C.S. § 8541 specifically excludes "acts of others" from the waiver of general immunity, and cited cases decided under the Political Subdivision Tort Claims Act to support that holding. Not addressed was the difference in language between that section and 42 Pa.C.S. § 8521(a) which does not contain the "acts of others" language. It provides:

Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.

Our Supreme Court granted an allowance of appeal in *Moore* under the caption *Moore v. Cuyler*, 520 Pa. 610, 553 A.2d 971 (1988), but then dismissed it as being improvidently granted, *Moore v. Reid*, 523 Pa. 418, 567 A.2d 1040 (1990). We continued to use an identical analysis as to whether third-party conduct precludes the imposition of liability on "commonwealth parties" or "local agencies". *See Cheronis v. Southeastern Pennsylvania Transportation Authority*, 114 Pa.Commonwealth Ct. 412, 539 A.2d 15 (1988); *Rippy v. Fogel*, 108 Pa.Commonwealth Ct. 296, 529 A.2d 608 (1987). It should be noted that our Supreme Court in *Goryeb v. Commonwealth, Department of Public Welfare*, 525 Pa. 70, 575 A.2d 545 (1990), stated "Since we have determined this case on other grounds, we need not decide if acts of others are to be treated the same under the Sovereign Immunity Act as they are under the Political

Extending the *Mascaro* rationale to include non-criminal conduct, this court in *Crowell v. City of Philadelphia*, 131 Pa.Commonwealth Ct. 418, 570 A.2d 626, *appeal granted*, 525 Pa. 550, 582 A.2d 1311 (1990), held that governmental activity not only must be "a" cause of the accident, but "the" cause of the accident. If a third-party's negligence in any way contributed to the accident, then, the court reasoned, the governmental activity "itself" did not cause the accident. The *Crowell* holding had an enormous impact because it effectively eradicated joint tortfeasor liability being imposed on any governmental unit when any negligence by a third party is involved. *Crowell*, 131 Pa.Commonwealth Ct. at 425–426, 570 A.2d at 630.

Backing away from that result, this court, in *Buschman v. Druck*, 139 Pa.Commonwealth Ct. 182, 590 A.2d 53 (1991), a case also involving a collision of two vehicles on a DOT highway which was allegedly defectively designed, held by a majority of judges, many writing separately, that we erred in holding a commonwealth party or local agency could not be sued merely because there was another joint tortfeasor. Overruling *Crowell* in part, the court concluded that the limitation on liability established by *Mascaro* should only apply to situations where the act of the third party is not merely a substantial factor in bringing about the injury, but is in the nature of a superseding cause to the negligence of the commonwealth party or local agency. This court agreed that criminal conduct caused the collision, but we were unable to agree when and under what theory non-criminal negligence would act to preclude liability based upon third-party conduct.

The Supreme Court, finally, in two cases decided on the same day,[12] addressed the government's liability when a third party was involved. In *Dickens v. Horner*, 531 Pa. 127, 611 A.2d 693 (1992), the plaintiff was seriously injured when an automobile travelling at a high rate of speed in a police chase struck her. The police officer initiated the chase because he

Subdivision Tort Claims Act." That issue has not been raised in this case.

12. June 17, 1992.

believed that the actor (Horner) was driving under the influence of drugs and without a driver's license. Overturning the decision of the Commonwealth Court [13] that the decision to initiate a pursuit and failure to exercise due care fell within the vehicle exception to immunity, the Supreme Court, without mentioning *Crowell* or *Buschman*, held that the criminal acts of third parties are causes which absolve the local government from liability for the harm caused by third parties. *Dickens'* analysis, while mentioning the *Mascaro* rationale, appears to rely more on "the general rule that the criminal and negligent acts of third parties are superseding causes which absolve the original actor from liability." [14] *Dickens*, 531 Pa. at 127, 611 A.2d at 695.

The other case decided was *Crowell v. City of Philadelphia*, 531 Pa. 400, 613 A.2d 1178 (1992), the case that began the present controversy. *Crowell* dealt with whether third-party non-criminal negligence could preclude joint tortfeasor liability from being imposed on a governmental unit. In *Crowell*, the plaintiffs' three year old son was killed by a driver who crossed over the median divider at a curve in the road and struck plaintiffs' vehicle. Just before the curve where the accident occurred, the traffic directional sign, erected by the City of Philadelphia, warned drivers that the road curved to the left when it, in fact, curved to the right. At the time of the accident, the driver was drunk and ultimately pled guilty to driving while intoxicated. As to the driver's criminal conduct of driving under the influence, the Supreme Court found that it did not insulate the city from liability for wrongly placing a traffic directional sign, because there was no evi-

---

**13.** Captioned in the Commonwealth Court as *Dickens v. Upper Chichester Township*, 123 Pa.Commonwealth Ct. 226, 553 A.2d 510 (1989).

**14.** Section 448 of the Restatement (Second) of Torts provides:
The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

dence offered at trial that the intoxication caused the driver to react differently than any other driver who came across the wrongly placed directional sign.

Addressing whether the driver's ordinary negligence in crossing the median would insulate the city from liability, the Supreme Court held that "the governmental unit can be subject to liability despite the presence of an additional tort-feasor if the governmental unit's actions would be sufficient to preclude it from obtaining indemnity from another for injuries rendered to a third person." *Id.*, 531 Pa. at 407, 613 A.2d at 1184. The court then went on to explain that "[t]his assumes, of course, that the specific facts fall squarely within one of the exceptions. Alternatively, if the claim against the governmental unit is dependent merely upon the unit's status, as opposed to the action fitting within one of the statutory exceptions, then the language of Section 8541 [here, Section 8521] would preclude liability." *Id.*, 531 Pa. at 407, 613 A.2d at 1184. In effect, the court held that when a governmental unit is not precluded from receiving indemnity from the negligent third party, then it will be insulated from liability.

To determine whether indemnity was available, the Supreme Court relied heavily on its decision in *Builders Supply Company v. McCabe,* 366 Pa. 322, 77 A.2d 368 (1951). Quoting from that case, the court found that the right to indemnity "enures to the person who, without *active fault* on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another for which he is only secondary liable." (Emphasis added). *Id.*, 531 Pa. at 406, 613 A.2d at 1183.[15] Because the City of Philadelphia was "actively negligent" in placing an erroneous traffic control device, the court held that it was not entitled to indemnity because it was "actively" negligent and, consequently, was not shielded from liability.

From *Crowell*, it appears then that active negligence is required and merely failing to carry out an action, an omis-

15. In *Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 465 A.2d 1231 (1983), the opinion in support of judgment explained at length the law of indemnification in general and Pennsylvania in particular.

sion, would preclude liability. *Builders Supply* explains that "secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the one primarily responsible." 366 Pa. at 328, 77 A.2d at 371. *Crowell* then establishes the principle that for a governmental unit to be held liable, active fault that has a direct nexus to the plaintiff is required on the part of the governmental unit to impose liability. Mere failure to act will not act to impose such liability.[16]

To summarize, together *Dickens* and *Crowell* appear to hold:

● if the third party's conduct is criminal and was the cause of the accident, it is a superseding cause and immunizes local agencies and commonwealth parties from joint tortfeasor liability.

● if the third party engages in non-criminal negligent conduct, a governmental unit can only be held liable if there is "active fault on its part", i.e., the governmental act must be one of commission rather than omission. Otherwise, the negligent act of the third party will be considered an intervening superseding cause.[17]

● even where there is active fault by the governmental entity, there must be, in addition, a direct nexus between the plaintiff's injury and the governmental negligence. If "but for" the governmental negligence the injury would not have occurred, then the governmental body can still be determined to be liable, even though a negligent third party

16. *See Gardner v. Consolidated Rail Corp.*, 524 Pa. 445, 573 A.2d 1016 (1990), finding that various sections of the Restatement do not impose a duty to act on the city to undertake discretionary activities to protect from dangers off the land. *But see Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992).

17. In footnote 10 of *Crowell*, the Supreme Court cited with approval the Commonwealth Court's decision in *Maloney v. City of Philadelphia*, 111 Pa.Commonwealth Ct. 634, 535 A.2d 209 (1987), where the city was not liable for the supervision of the erection of temporary bleachers by third parties. *See also Vattimo, supra.*

was also involved. Otherwise, the third party's negligence will be considered to be primary and vitiate any incidental negligence on the part of the government.[18]

■ Applying the holdings of *Dickens* and *Crowell,* we must determine whether the facts as pled in Powell's amended complaint establish that Drumheller's criminal conduct was the cause of Vincent Powell's death, allowing us to sustain DOT's preliminary objections. Powell's complaint alleges that Drumheller was convicted of both "driving under the influence" as well as "homicide by vehicle while driving under the influence". In regard to whether the driving under the influence conviction was the cause of Vincent Powell's death, paragraph 14 of the amended complaint provides:

As a consequence of [being visibly intoxicated], Defendant Drumheller drove his motor vehicle into a vehicle driven by Plaintiff's decedent, while Drumheller was under the influence and thereby caused the grievous bodily injuries ...

See also paragraphs 24a. and 25a. of the amended complaint. These allegations are sufficient to establish that Drumheller's criminal conviction of driving under the influence was conduct that acted as a superseding cause to DOT's alleged negligence.

Moreover, Drumheller's conviction of "homicide by vehicle while driving under the influence" is also sufficient to absolve DOT of liability. 75 Pa.C.S. § 3735 defines homicide by vehicle as:

Any person who unintentionally *causes the death* of another person as the *direct* result of a violation of section 3731 (relating to *driving under influence* of alcohol or controlled

---

18. *See* Restatement (Second) of Torts, § 431, which requires a defendant's conduct to be a "substantial factor". For it to be a substantial factor, Section 433 of the Restatement provides:

  The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:
    (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
    (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
    (c) lapse of time.

substance) and who is convicted for violating section 3731 is guilty of a felony of the third degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years. (Emphasis added).

Under this provision, the cause of the death has to result from the criminal conduct of the driver in driving under the influence, and, as such, again establishes that Drumheller's conduct acted as a superseding cause to DOT's negligence.

Because *Dickens* absolves governmental units of liability for accidents caused by the superseding conduct of third parties engaged and criminal conduct and by definition, and Powell's complaint proves that the criminal conduct was the cause of the injuries, DOT cannot be held jointly liable for Vincent Powell's death.[19]

Accordingly, the decision of the trial court is affirmed.

## ORDER

AND NOW, this 19th day of February, 1993, the order of the Court of Common Pleas of Chester County dated April 18, 1991, No. 90–02301, is affirmed.

SMITH and FRIEDMAN, JJ., dissent.

---

19. DOT also raised a demurrer that Powell failed to state a cause of action because there is no common law or statutory duty to install a centerline. Because we have held that DOT has no liability as a result of the superseding criminal conduct of a third party, we need not address that issue.