## Nestor v. PennDOT

*M. Scott Curran,* for plaintiff.

*Stephen P. McCloskey* and *Roger J. Ecker,* for defendant.

*John G. Eidemueller, Jr.,* for additional defendant.

TERPUTAC, *J.,* September 24, 1993—Before the court en banc are the motions for post-trial relief by the defendants and a petition for delay damages by the plaintiff.

The vehicular accident occurred on April 27, 1988, in North Franklin Township, Washington County, Pennsylvania. Kevin J. Nestor (Nestor), the plaintiff, commenced this action on May 16, 1989, against Commonwealth of Pennsylvania, Department of Transportation (PennDOT). Later PennDOT brought suit against Hestle Laverne Ealy (Ealy) as additional defendant.

At the conclusion of the trial by jury on December 9, 1991, the jury rendered its verdict in the amount of $425,000 in favor of the plaintiff and against Penn DOT and Ealy. Answering the questions on the verdict slip, the jury found that the plaintiff was 40 percent causally negligent, PennDOT 20 percent, and Ealy 40 percent. The trial judge molded the verdict to reflect the sum of $255,000 in favor of the plaintiff. Timely motions for post-trial relief were filed by PennDOT and Ealy. Plaintiff filed a petition for delay damages pursuant to Pa.R.C.P. 238.

About 4:30 P.M. on April 27 Nestor was operating his motorcycle in a southerly direction on State Route 18; he was following a vehicle operated by Elaine Johnson. The weather was clear and dry. As these vehicles were proceeding along Route 18, a motor vehicle operated by the additional defendant Ealy came out of Driftwood Drive, a small alley-like road, and made a right turn onto Route 18. After travelling about 60 feet on Route 18, Ealy made a left turn and began

crossing the northbound lane of Route 18 in order to park at Scotty's, a busy convenience/hardware establishment.

Taking the testimony in the light favorable to the verdict winner, the plaintiff, the accident occurred in the manner indicated herein.[1] As Ealy's vehicle made the left turn, at an angle of about 30 degrees to 45 degrees, the plaintiff had slowed his motorcycle nearly to a stop, inasmuch as the Johnson vehicle had slowed down to allow Ealy to enter Route 18. After the plaintiff saw Ealy pull out of Driftwood Drive and turn right on Route 18 and the Johnson vehicle began moving forward in the same direction, the plaintiff entered the passing lane, attempting to pass the Johnson and Ealy vehicles. When the plaintiff was fully in the passing zone, travelling about 45 miles per hour, Ealy turned his vehicle to the left and began to cross the passing lane. Immediately, the plaintiff slammed on his brakes and skidded, but the impact occurred as his motorcycle struck the rear of the Ealy vehicle. Officer Forgie of the North Franklin Township Police Department testified that the motorcycle left about 55 feet of skid marks on the highway. The plaintiff was seriously injured when he was thrown off the motorcycle.

From the crest of the small hill going south on Route 18, the highway is straight; the view is about one-half mile. As the impact occurred, Ealy was going about 20 to 25 miles per hour attempting to cross the northbound lane.

The plaintiff testified he was in no hurry; he was not going anywhere in particular. He assumed Ealy was going to go straight south, and he did not see any turn signal on Ealy's vehicle.

In the motions for post-trial relief, the defendant and the additional defendant Ealy have asked for a new trial

---

1. In the additional defendant's brief, counsel has assumed facts and conclusions favorable to Ealy, who was not the verdict-winner.

or judgment n.o.v. The granting of a new trial is clearly a matter of discretion with the trial court. *Canery v. SEPTA,* 267 Pa. Super. 382, 406 A.2d 1093 (1979). The court should review the entire record and weigh the evidence in order to determine whether the verdict is against the clear weight of the evidence or whether the judicial process has effected a serious injustice. *Hilbert v. Katz,* 309 Pa. Super. 466, 455 A.2d 704 (1983). No verdict shocking to the judicial conscience ought to be allowed to stand. Judgment n.o.v. may properly be granted only in a clear case where the facts are such that no two reasonable persons can fail to agree that the verdict is improper. In deciding this kind of motion, the court is required to consider the evidence, as well as all reasonable inferences, in the light most favorable to the party who won the verdict. *Nernberg & Laffey v. Patterson,* 411 Pa. Super. 417, 601 A.2d 1237 (1991). If the verdict in favor of one of the defendants is improper in that the plaintiff cannot recover against the defendant, the court should enter judgment n.o.v. *McCloskey v. New York Life Insurance Co.,* 292 Pa. Super. 1, 436 A.2d 690 (1981).

## LIABILITY AGAINST PennDOT

As to liability against PennDOT, the plaintiff has alleged a dangerous condition of Route 18 as an exception to sovereign immunity.

"Section 8522. Exceptions to sovereign immunity

...

"(b) Acts which may impose liability.—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall be raised to claims for damages caused by:

...

"(4) Commonwealth real estate, highways and sidewalks.—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5)." 42 Pa.C.S. §8522(b)(4).

No one has alleged that paragraph (5), generally concerning potholes or sinkholes, is applicable. As we view the issue of liability against PennDOT, the plaintiff has charged the defendant with dangers occasioned by allowing a passing zone to exist in this area and by failing to post signs or otherwise to restrict the speed limit, which was 55 miles per hour. Evidence had been introduced showing that on at least two occasions, complaints with respect to the passing zone and speed limit along this stretch of highway were made to PennDOT: one complaint by the North Franklin Township Board of Supervisors and the other by State Representative Roger Raymond Fisher.

At issue, then, is whether plaintiff's cause of action falls within the real property exception to sovereign immunity provided for in the Judicial Code at 42 Pa.C.S. §8522(b)(4). We begin our analysis with *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987). There an action was brought against the City of Philadelphia and its youth detention center for injuries inflicted on a family by one of the detainees of the youth center who had escaped, the action having been based on the alleged negligent maintenance of the center. There the decision was grounded on the statutory interpretation of the Political Subdivision Tort Claims Act, as it is often called, not on the Sovereign Immunity Act with which we are concerned in the instant case. Denying liability against the city, the Supreme Court said:

"[We] hold that the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability." *Mascaro, supra* at 363, 523 A.2d at 1124.

To the same effect is *Dickens v. Horner,* 531 Pa. 127, 611 A.2d 693 (1992), where the court stated it cannot impose liability for the crimes of a third party (Horner attempted to elude police by driving at a high rate of speed through a stop sign) on the township and its police officer.

PennDOT and others were defendants in *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989), so that section 8522(b)(4) of the Sovereign Immunity Act was at issue. While they were attempting to avert a four-wheel vehicle backing towards them, the young people scrambled over an embankment and fell into a strip mine. The testimony showed that the embankment was seven feet outside the right of way of the state highway.

The Supreme Court reiterated its position taken in *Mascaro, supra,* that the real property exception, whether under the Political Subdivision Tort Claims Act or the Sovereign Immunity Act, must be strictly construed. Summary judgment which had been granted by the trial court was reinstated. The principles set forth in *Snyder, supra,* establish that a dangerous condition of Commonwealth real estate or highway must exist and that the dangerous condition must derive, originate from, or have as its source the Commonwealth realty. Under section 8522(b)(4), the exception is applied only to those cases where it is alleged that the artificial condition or defect of the land itself causes the injury, not merely when it facilitates injury by the acts of others. The court held that this exception is inapplicable because the strip mine highway, where the plaintiffs fell, was some distance from the edge of PennDOT's right of way. Further, the absence of lighting

in the area so as to create a deceptive appearance of the shoulder of the highway cannot be said to be an artificial condition or a defect of the land itself.

In *Snyder, supra,* the Supreme Court indicated that the Sovereign Immunity Act and the Political Subdivision Tort Claims Act, both dealing with immunities, are to be interpreted consistently.

The theory of liability in *Bendas v. Township of White Deer,* 531 Pa. 180, 611 A.2d 1184 (1992), was that PennDOT had either negligently failed to erect traffic control devices at an intersection (one was a PennDOT highway and the other a township road) or failed otherwise to correct a dangerous condition. The Commonwealth Court affirmed the trial court's denial of summary judgment by PennDOT. Affirming the denial, the Supreme Court held that the question of what is or is not a dangerous condition must be answered by the jury, for the question is one of fact, not of law. Therefore, the case is not appropriate for summary judgment.

From *Bendas* we are reasonably certain that PennDOT has the duty to make its highways safe for their intended purpose, that is, safe for the activities for which they are regularly used, intended to be used, or reasonably foreseen to be used. After asking the question what is a dangerous condition under section 8522(b)(4), the court stated that what constitutes a dangerous condition is an issue of fact. Still the court believes the case is not so clear on how one arrives at the definition of dangerous condition and how to apply it to cases coming before the courts.

When a third party engages in criminal conduct which causes the injury, it appears that the act of the third party will insulate the local agency and the Commonwealth party from liability. See *Mascaro, supra.* This principle was made clear in *Powell v. Drumheller,* 153 Pa. Commw. 571, 621 A.2d 1197 (1993). The administratrix appealed an order of the trial court which had sustained the pre-

liminary objections of PennDOT. Drumheller, attempting to pass another vehicle, collided with Vincent Powell's oncoming vehicle, killing Powell. In the complaint the administratrix alleged that Drumheller was driving while intoxicated and that PennDOT was negligent by allowing dangerous conditions to exist on its highway. In defense PennDOT contended the act of another (Drumheller trying to pass) caused the accident. The court held that because the Powell complaint charged the third party (Drumheller) with engaging in criminal conduct causing the injury, PennDOT could not be held jointly liable for Vincent Powell's death. Although the issues were raised in the complaint, the court did not discuss PennDOT's duty to install a centerline or no-passing sign.

Whether the intervening act of a third party will be treated the same under both statutes is uncertain. The Political Subdivision Tort Claims Act, §8541, specifically excludes "acts of others" from the waiver of general immunity. Yet the Sovereign Immunity Act does not contain this language. *Powell, supra.* Will the Supreme Court make a distinction or will it construe both statutes consistently despite the absence of the words "acts of others?"

Perhaps *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992), provides some guidance. From *Crowell* it appears that active negligence is required of the local agency (placing the wrong sign as a traffic control device), and not the mere failure to carry out an act. This case arose out of an accident when a city employee misplaced the directional sign (an act of negligence) and the jury found that this act of negligence was a substantial factor causing the accident. Because the basis of the jury's verdict was the active negligence of the city's employee, not merely the city's status along the chain of causation, the Supreme Court held that the verdict against the city was proper.

Although *Mascaro* and *Dickens* deal with the intervening criminal acts of third parties, the criminal acts of a third party are not necessary to bring the *Mascaro* principles into play. *Snyder, supra; Downing v. Philadelphia Housing Authority,* 148 Pa. Commw. 225, 610 A.2d 535 (1992). To impose liability on local agencies or Commonwealth parties, *Mascaro* and subsequent cases focus the discussion on the statutory requirements of the Political Subdivision Tort Claims Act and the Sovereign Immunity Act.

In the case before us, it seems that excessive speed on this straight highway was not a problem. Even if it were, neither the posting of speed signs nor the posting of no-passing signs nor painting yellow no-passing lines on the highway caused the plaintiff's injuries. Indeed, the jury found the plaintiff 40 percent causally negligent and the additional defendant Ealy 40 percent causally negligent. Thus, the injuries had been caused by the acts of the plaintiff and of the additional defendant. An artifical condition or defect of the land itself did not cause the accident and injuries.

Ordinary tort principles on causation are inappropriate in analyzing whether the real property exception applies. *Downing, supra.* We hold that by virtue of *Mascaro, Snyder, Downing,* and other cases, PennDOT committed no act of negligence, the injuries to the plaintiff did not result from an artificial condition or defect of the real property of PennDOT, and the intervening acts of the plaintiff and of Ealy serve to render the real property exception inapplicable. Judgment n.o.v. will be granted in favor of PennDOT. Because we have entered judgment n.o.v. in favor of PennDOT, we need not address the additional issue raised by this defendant.

At this juncture, the court is of the opinion that we must grant a new trial on the issue of negligence as

between the plaintiff and the additional defendant, unless of course, we find that Ealy is entitled to judgment n.o.v. Because the jury apportioned negligence between the three parties, Nestor 40 percent, PennDOT 20 percent, and Ealy, 40 percent, we may not on our own accord assume how the jury would have apportioned negligence had PennDOT not been a party. To alter the percentages would require that the Court assume facts not apparent from the verdict; thus we must set aside the verdict and grant a new trial. See *Thompson v. City of Philadelphia,* 320 Pa. Super. 124, 466 A.2d 1349 (1983), *rev'd on other grounds,* 507 Pa. 592, 493 A.2d 669 (1985).

It is not enough to say that a new trial has been granted in the interests of justice. Rather, we state that in the context of the instant matter where one of the defendants has been let out, we have no way to ascertain whether Ealy might be held liable to the plaintiff. Both liability and damages were vigorously contested. In the next trial with one plaintiff against one defendant, the jury will have to decide whether Ealy is liable to the plaintiff. We feel this is sound justification for a new trial. *Coker v. S.M. Flickinger Company, Inc.,* 533 Pa. 441, 625 A.2d 1181 (1993).

Next, we must determine whether Ealy, is entitled to entry of judgment n.o.v. We turn now to his contentions.

## OPENING REMARKS BY PLAINTIFF'S COUNSEL

The additional defendant alleges trial error when plaintiff's counsel, during his opening remarks to the jury, made what the defendant says is a reference to post-accident changes. After a cautionary instruction, the court denied a motion for mistrial.

During the pre-trial discussion in chambers, the court thought that reference to modifications along the highway might be highly prejudicial. N.T. p. 12. as part of his opening statement to the jury, plaintiff's counsel said this:

"At the end of this case, I am going to ask you for a verdict on behalf of Kevin Nestor because Penn DOT and Mr. Ealy, didn't do what they should have done; with a right that Kevin had expected them to do: PennDOT to change the passing zone into a no-passing zone to make this area safe." *Id.* p. 65.

Mr. Eidemueller, Deputy Attorney General, objected immediately. Whether the motion for mistrial should have been granted requires a determination based upon an assessment of the circumstances under which the statements were made and the precaution taken by the court and counsel to prevent such remarks from having a prejudicial effect. *Martin v. Philadelphia Suburban Transport Co.,* 435 Pa. 391, 257 A.2d 535 (1969).

In the first place, a careful reading about what was said by plaintiff's counsel shows that the remark was at least ambiguous; more likely, the jury could interpret it as part of the theory of his case: that PennDOT should have taken precautions so that passing along this part of the highway should not be allowed. In the second place, if the words were interpreted as indicating post-accident changes, though an unlikely interpretation, the cautionary instructions by the court cured any possible prejudice. Unfortunately, in his response to the remarks, the deputy attorney general objected and then followed with these words before the jury:

"After the accident the modifications that we agreed to in chambers this morning, he was not to mention that. May we approach [the bench]?" N.T. p. 66.

It seems to us that emphasis was given to the remarks of plaintiff's counsel, and this latter remark caused more problems than it solved. We believe plaintiff's remarks were inadvertent and had no impact upon the jury. our curative instructions must be reviewed in the light of the deputy attorney general's response about modifications after the accident. Under all the circumstances we hold that the additional defendant, Ealy, was not entitled to a mistrial, and our refusing to grant it was proper.

## DIAGRAM NOT DRAWN TO SCALE

During the course of the deliberations, the jury asked, by submitting a question, whether they could see and use the accident diagram. Over objections of the additional defendant, the court allowed the diagram to be sent to the jury room.

As the trial was underway, a diagram of the accident scene had been drawn on a sheet of paper placed on an easel. None of the parties offered the diagram into evidence; it was not drawn to scale. When the court allowed the diagram to go to the jury room, the following cautionary instruction was given:

"ANSWER: Yes, but I caution you that the diagram is not drawn to scale, and different markings were made by different attorneys and parties. You are to consider it only as a rough draft or diagram of the accident scene." N.T. p. 464.

Whether diagrams may be considered by the jury in its deliberations is usually left to the sound discretion of the trial court. *Reichman v. Wallach,* 306 Pa. Super. 177, 452 A.2d 501 (1982). In *Reichman,* a blackboard containing computations of damages, prepared by plaintiff's counsel was used at trial. It had not been admitted into evidence. The Superior Court held that allowing

the blackboard to go with the jury for deliberation was discretionary and that the fact the trial court had not stated the blackboard was not evidence was not reversible error.

Several factors lead to the conclusion that the court did not abuse its discretion. The witnesses, who had some knowledge of the happening of the accident, used the diagram during their testimony. No one offered or made any corrections. Indeed, even additional defendant Ealy agreed that the accident occurred as indicated on the diagram. N.T. p. 331. Thus, the diagram was authenticated by one of the parties who opposed its submission to the jury. With the exception that it was not drawn to scale a condition apparent to every witness and juror, the diagram fairly depicted the scene of the accident.

As we have indicated, Ealy has contended that the plaintiff had been operating his motorcycle at an excessive speed and that he should not have been attempting to pass in the area of the accident. These arguments, we believe, do not affect the decision of the court when we allowed the diagram to go to the jury room.

And Ealy has also objected that the trial judge failed to say in the cautionary instruction that the diagram "was not evidence." No one asked the court to utter this specific caution to the regular instruction on the point. The jury's having asked for the diagram, the court properly exercised its discretion by allowing them to use it. *Reichman, supra.* The other alleged reasons to preclude the submission of the drawing are irrelevant.

## THE ASSURED CLEAR DISTANCE AHEAD RULE

After considering the points for charge on the issue of the assured clear distance ahead as it applied to

the plaintiff, the trial judge finally decided to refuse the points. We hold that the ruling was correct.

The assured clear distance ahead rule provides that no person shall operate any vehicle upon a highway at a speed greater than that which will permit the person to stop within the assured clear distance ahead. *Stacy v. Thrower Trucking, Inc.,* 253 Pa. Super. 150, 384 A.2d 1274 (1978). By this rule the operator is required to maintain such control over the vehicle as will enable the operator to stop and avoid obstructions within his vision. *Brown v. Schriver,* 254 Pa. Super. 468, 386 A.2d 45 (1978). The distance within which the operator must be able to stop will vary according to the visibility and the attendng circumstances. *Fish v. Gosnell,* 316 Pa. Super. 565, 463 A.2d 1042 (1983).

Assured clear distance ahead applies to static or essentially static objects. *Fish, supra.* Taking the testimony in the light most favorable to the verdict winner, we emphasize that Ealy advanced upon the main highway and crossed over the passing lane in order to park at Scotty's. How can one reasonably say that the plaintiff should have stopped his motorcycle within the assured clear distance ahead? If the plaintiff had been following Ealy for a distance, in which it follows that the plaintiff is legally obligated to bring his motorcycle to a stop within the assured clear distance ahead of him, that is another situation. In the instant case the other vehicle moved into the plaintiff's path within a time of a few seconds, quite short of the assured clear distance ahead. *Unangst v. Whitehouse,* 235 Pa. Super. 458, 344 A.2d 695 (1975).

It seems undisputed that the additional defendant entered the main highway, travelled only 60 feet, made a turn to his left without any signal until he had driven about one vehicle length along the main highway. N.T.

pp. 330-331. Ealy's turning to the left under the circumstances cannot be deemed to give sufficient warning to the plaintiff about the turn. No static or essentially static object, including vehicles moving in the same direction, was present; consequently, the assured clear distance ahead rule cannot apply to the plaintiff. *Papandrea v. Hartman,* 352 Pa. Super. 163, 507 A.2d 822 (1986).

Finally, as to the points for charge, we believe trial court covered them generally during the instructions. We find no merit in the other assignments of error. Under the circumstances, Ealy's motion for judgment n.o.v. is denied.

Because we have granted the motion for a new trial, we need not discuss the petition for delay damages, as that issue is moot.

ORDER

And now, September 24, 1993, after consideration of the briefs and oral argument before the court en banc, it is ordered, adjudged, and decreed as follows:

(1) The motion for judgment n.o.v., in the post-trial motions of Commonwealth of Pennsylvania, Department of Transportation, is granted. The prothonotary shall enter judgment in favor of the Commonwealth of Pennsylvania, Department of Transportation, and against the plaintiff, Kevin J. Nestor.

(2) The motion for judgment n.o.v., in the post-trial motions of Hestle Laverne Ealy, is denied.

(3) The jury verdict entered on December 9, 1991, is hereby set aside and a new trial is granted to Hestle Laverne Ealy.