**Rosalind WILSON, Appellant,**

**v.**

**PHILADELPHIA HOUSING
AUTHORITY.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 19, 1999.

Decided July 26, 1999.

Richard Glassman, Philadelphia, for appellant.

John R. O'Donnell, Philadelphia, for appellee.

Before COLINS, President Judge, and DOYLE, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J., and LEADBETTER, J.

PELLEGRINI, Judge.

Rosalind Wilson (Wilson) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) granting the motion for summary judgment filed by the Philadelphia Housing Authority (PHA).

The facts of this case are not in dispute. On August 22, 1992, Wilson's daughter be-

came involved in an altercation that took place in front of an unoccupied residence owned by the PHA. Upon learning of the altercation, Wilson interceded. While attempting to break up the fight, one of the participants pushed her. Wilson fell, striking her right ankle against the stump of a metal pole protruding from the ground in front of the vacant residence and sustaining a fractured ankle. She filed suit against the PHA alleging, *inter alia*, that the PHA was negligent by allowing the pole stump to remain in the area and by failing to correct the unsafe condition which caused her injuries. After discovery was completed, the PHA filed a motion for summary judgment alleging that it was immune from suit based on sovereign immunity,[1] and that the real estate exception found at 42 Pa.C.S. § 8522(b)[2] did not render it liable because there was a superceding cause of Wilson's injuries—the push by the third party.

The trial court granted the PHA's motion finding that the direct cause of Wilson's injuries was the person who pushed her and not the pole stump upon which she fell. This appeal by Wilson followed.[3]

Wilson contends that the trial court erred by finding that the PHA was not liable for her injuries because her injuries were caused by the pole stump and not by the person who pushed her. She also argues, however, that even if the person who pushed her is liable, the PHA can also be liable for her injuries because it was a concurrent cause of her injuries and is a joint tortfeasor.[4] Relying on this Court's holding in *Byard v. Philadelphia Housing Authority*, 157 Pa.Cmwlth. 269, 629 A.2d 283 (1993), *petition for allowance of appeal denied*, 536 Pa. 618, 637 A.2d 278 (1993), and our Supreme Court's decision in *Mascaro v. Youth Study Center of the City of Philadelphia*, 514 Pa. 351, 523 A.2d 1118

1. 42 Pa.C.S. §§ 8501–8521. Section 8521(a) specifically provides:

   Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.

2. 42 Pa.C.S. § 8522(b) provides in relevant part:

   The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

   ⁂

   (4) Commonwealth real estate, highways and sidewalks.– A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, lease-holds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

   The PHA is a Commonwealth agency. *Downing v. Philadelphia Housing Authority*, 148 Pa.Cmwlth. 225, 610 A.2d 535 (1992), *petition for allowance of appeal denied*, 532 Pa. 658, 615 A.2d 1314 (1992). *But see Southeastern Pennsylvania Transportation Au-*

*thority v. Union Switch and Signal, Inc.*, 161 Pa.Cmwlth. 400, 637 A.2d 662, *petition for allowance of appeal denied*, 538 Pa. 662, 648 A.2d 792 (1994).

3. Our scope of review of the trial court's order granting the PHA's motion for summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Downingtown Area School District v. International Fidelity Insurance Co.*, 671 A.2d 782 (Pa.Cmwlth. 1996). Summary judgment should be granted when there is no material issue of fact and the case is free and clear from doubt, with any doubt being resolved in favor of the non-moving party. *Id.*

4. The concept of joint tortfeasors involves the situation where two parties each are guilty of negligence and the negligence of each party causes some harm or injury to a plaintiff. *See Mamalis v. Atlas Van Lines, Inc.*, 364 Pa.Super. 360, 528 A.2d 198 (1987), *aff'd*, 522 Pa. 214, 560 A.2d 1380 (1989). Where there are concurrent causes of a plaintiff's injuries, each party – or the "joint-tortfeasors" – are jointly liable for damages. One of the parties can be held for the full amount of damages if the other party cannot pay, even when they acted independently of each other if they each caused a single harm. 42 Pa.C.S. § 8324. *See also Black v. Shrewsbury Borough*, 675 A.2d 381, 386 (Pa.Cmwlth.1996).

(1987) (City not liable for actions of third party who attacked family after escaping from a negligently-maintained juvenile facility), the PHA argues that because ordinary tort causation principles do not apply in the context of sovereign immunity, it is not responsible for Wilson's injuries because she was injured as a result of a third party's actions even if the injury would not have occurred but for the defect in its property.

In *Byard*, a minor was injured when his companion slammed a fire door on his hand as they were running to escape from a dog roaming the hallway of their PHA residence. An injury resulted necessitating the amputation of the tip of the minor's left index finger. The minor's parents filed suit against the PHA alleging, among other things, that the fire door was defective and had a jagged metal edge that had torn off part of their child's finger. Relying on *Mascaro*, where our Supreme Court held that a local agency was not liable for actions of third parties,[5] we held that the real estate exception to sovereign immunity only applied to those cases where it was alleged that the defect of the real estate itself caused the injury, not when it merely facilitated the injury caused by the action of a third party whose actions were outside the statute's scope of liability.

■ However, both *Byard* and *Mascaro* were decided prior to our Supreme Court's decision in *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995), holding that just because an injury was caused by the negligence of a third party did not mean that a government entity was automatically immune.[6] In *Powell*, Mr. Powell died as a result of injuries sustained when the car in which he was riding was hit head on by the car driven by an intoxicated Mr. Drumheller when he attempted to pass a car, and the car in which Mr. Powell was riding went over an embankment because there was no guardrail. Mr. Powell's estate brought an action against Mr. Drumheller and PennDot. Addressing the issue of concurrent causation and joint liability, our Supreme Court held that a governmental entity could be held liable even if another party was also at fault if its negligence was a substantial cause in bringing about the accident. For a governmental entity to be held not liable, our Supreme Court stated that the negligence of a third party had to be an intervening cause that superceded the governmental entity's negligence stating:

the sovereign immunity statute does not include this language. In *Black v. Shrewsbury Borough, supra,* the concurring opinion posited that the provision relieves governmental entities of joint-tortfeasor liability. As to Commonwealth entities, the concurring opinion explained that although there was no corresponding language regarding third parties in the parallel provision for Commonwealth parties, 42 Pa.C.S. § 8521(a) could be interpreted to exclude commonwealth parties from liability for acts of third parties. "Local agencies prior to the abolishment of judicially created tort immunity were subject to suit when engaged in proprietary actions, and for joint and severally liability for damages when third-party negligence was involved. Unlike local agencies, the Commonwealth was never liable for any damages, including joint tortfeasor liability. By not waiving immunity for joint tortfeasor liability, a Commonwealth party retains immunity from paying damages resulting from joint and several liability." *Id.* at 388.

5. Even though the Court in *Mascaro* was interpreting local agency immunity under 42 Pa.C.S. § 8541, the rule of statutory interpretation at that time required us to interpret the Sovereign Immunity Act and the Political Tort Claims Act in lockstep, unless the express language indicated otherwise, because they deal with indistinguishable subject matter and are to be interpreted consistently. *Kilgore v. City of Philadelphia,* 553 Pa. 22, 717 A.2d 514 (1998).

6. In *Powell*, the Supreme Court noted that the issue of joint liability in cases involving governmental immunity was "troublesome" because of the language in the governmental immunity statute found at 42 Pa.C.S. § 8541. That section provides that a local agency shall not be liable for damages on account of injury to a person caused by "any other person." While that no longer means that acts of third parties are automatically intervening superceding causes, what it does mean is that it has never been addressed in a holding. Also,

[a] determination of whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury... It is for the jury in the instant case to determine whether Drumheller's actions in attempting to pass a car while under the influence of alcohol thus crossing into Mr. Powell's lane were so extraordinary as to be unforeseeable to PENNDOT when designing the highway. Accordingly, we cannot say with certainty that no recovery against PENNDOT is possible.

*Powell,* 653 A.2d at 624–625. As a result, ordinary tort causation principles now apply, and just because a third party was involved does not mean that the governmental entity is automatically immune.

Recently, in *Dean v. Department of Transportation,* 718 A.2d 374 (Pa.Cmwlth. 1998), we addressed the issue of who assumes liability when there are two concurrent causes of an accident, one for which immunity has not been waived and precipitates the accident and another cause for which immunity has been waived and causes the more severe injuries. In that case, the plaintiff sustained serious injuries resulting in quadriplegia after the car in which she was riding as a passenger fishtailed on a snow-covered road, causing the driver to lose control of the car which then went over a steep embankment where it overturned sideways. The plaintiff alleged that PennDot was liable for her injuries because it negligently failed to place a guardrail on that portion of the road, conduct that falls within an exception to immunity[7] where the accident occurred, while PennDot argued that it was not liable for Dean's injuries because it was the snow on the road, a condition that did not fall within any exception,[8] that caused the car to leave the roadway, and the absence of a guardrail merely facilitated her injuries by allowing the car to proceed down the embankment.

In rejecting PennDot's position, we stated, "we believe that even if a condition exists that sets the accident in motion that is not considered a dangerous condition of, in this case, the highway [real estate], that does not mean that a second dangerous condition of the highway that caused a plaintiff's injuries is not actionable." *Id.* at 378. We noted that this interpretation of the sovereign immunity statute was "consistent with 'normal' negligence law that provides there can be two or more proximate causes of injuries in a negligence action because a negligent act may be a proximate cause of damages even though other causes may have contributed to the result." *Id.* at 379. To escape liability where there were two or more substantial causes of damages, we stated that the defendant had to show that the plaintiff's injuries would have been the same even without its negligence. We then held that if the absence of a guardrail was found to be a dangerous condition of the real estate, PennDot would be liable under the real estate exception to sovereign immunity despite the fact that it might not be liable for the snow on the roadway, the cause that set the accident in motion.

■ Although *Dean* is somewhat different in that the Commonwealth party was purportedly negligent for both causes of plaintiff's injuries, the holding still applies even though a third party was responsible for the other concurrent causes of plaintiff's injuries. In this case, the third party who pushed Wilson and which set the action in motion that caused her injuries caused Wilson to fall on the pole stump, a dangerous condition of the real estate. Even though a third party caused the accident, unless it can be shown that the third

---

7. *See Fidanza v. Department of Transportation,* 655 A.2d 1076 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 542 Pa. 677, 668 A.2d 1138 (1995).

8. *See Metkus v. Pennsbury School District,* 674 A.2d 355 (Pa.Cmwlth.1996); *Huber v. Department of Transportation,* 122 Pa.Cmwlth. 82, 551 A.2d 1130 (1988), *petition for allowance of appeal denied,* 525 Pa. 637, 578 A.2d 931 (1989).

party's conduct was an intervening superceding cause, the PHA would still be liable for its negligent conduct. Because *Dean* holds that there can be more than one proximate cause of Wilson's injuries, and *Powell* said the acts of third parties are not automatically intervening superceding causes, the trial court's order granting the PHA's motion for summary judgment is vacated and the case is remanded for further proceedings consistent with this opinion.[9]

Judge FRIEDMAN concurs in the result only.

### ORDER

AND NOW, this 26th day of July, 1999, the order of the Court of Common Pleas of Philadelphia County, dated November 3, 1997, is vacated. The case is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction is relinquished.

FLAHERTY, Judge, concurring.

I join the opinion of the majority. I write separately because I believe that before we can vacate the order of the trial court, we must respond to the argument raised by PHA that it cannot be held liable for a mere failure to act.

I agree with the majority that *Dean v. Department of Transportation*, 718 A.2d 374 (Pa.Cmwlth.1998) adequately addresses the issue of whether Commonwealth parties may be held liable for injuries of which they are a concurrent cause. However, *Dean* does not sufficiently address PHA's argument that it cannot be liable for injuries where PHA's negligence consists of a mere failure to act.

Fairly read, PHA's argument is that even if PHA is concurrently negligent and its concurrent negligence was a proximate cause of the harm, it cannot be held liable for its mere failure to act. This argument must be addressed because, if PHA is correct, notwithstanding *Dean*, the trial court's disposition would be correct and PHA would be entitled to summary judgment.

PHA asserts that it cannot be held liable for a mere failure to act. PHA argues that

> PHA cannot be held jointly liable for a failure to act. Under Pennsylvania law, omissions cannot serve as the basis for imposing liability pursuant to the real property exception to the Sovereign Immunity Act. *See Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995)("*Crowell* ... establishes the principle that for a governmental unit to be held liable, *active fault that has a direct nexus to the Plaintiff is required* on the part of the governmental unit to impose liability. *Mere failure to act will not impose liability.*")(emphasis added [by PHA in its brief]).

PHA's brief at pp. 23–24.[1]

In *Powell v. Drumheller*, 153 Pa. Cmwlth. 571, 621 A.2d 1197 (1993) (*Drum-*

---

9. Wilson also argues that the trial court erred in determining that the pole stump was a defect "on" the real property rather than a defect "of" the real property. The trial court held that the pole stump was a condition "on" PHA property as opposed to a dangerous condition "of" PHA property. Wilson argues that the pole stump was a fixture "of" the property and constituted real property rather than personal property and not a condition of real property for which the PHA would not be liable. Whether the pole stump was a fixture of the property owned by the PHA is a question for a jury to determine and precludes the granting of summary judgment. *See Davis v. Brennan*, 698 A.2d 1382 (Pa.

Cmwlth.1997) (whether something constitutes a fixture or personal property is a fact question for a jury and precludes summary judgment).

1. The material quoted by PHA within the parentheses after its citation to the Supreme Court case of *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995)(*Drumheller II*) is not found in that opinion. Rather, the quoted material is found in this court's opinion in *Powell v. Drumheller*, 153 Pa.Cmwlth. 571, 621 A.2d 1197 (1993), *rev'd*, 539 Pa. 484, 653 A.2d 619 (1995)(*Drumheller I*).

In *Drumheller*, David Drumheller (Drumheller), driving with a suspended license and

*heller I)*, this court ruled that PennDOT was immune because the criminal actions of Drumheller constituted a superseding cause of Powell's injuries, thus cutting off any potential liability of PennDOT. In *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995)(*Drumheller II)*, the Supreme Court reversed this court's decision. The Supreme Court stated that

> [w]e recognize that our decision in *Crowell* reaffirmed the principle of joint liability by concurrent causes in the context of our governmental immunity statute, but we find these principles equally, if not more so, applicable in this case involving sovereign immunity. Here, Powell alleges that her husband's death was a result of the joint negligence of Drumheller and PENNDOT. Much like the situation in *Crowell*, Ms. Powell avers that the accident was caused by two concurring causes: (1) the negligent driving of Mr. Drumheller under the influence of alcohol and (2) the negligent design **and maintenance of the Commonwealth highway** which prevented Mr. Powell from taking action to avoid the accident.

*Drumheller II*, 539 Pa. at 491–92, 653 A.2d at 622–23 (emphasis added, footnote deleted). The negligent maintenance of the Commonwealth highway included Penn-DOT's **failure** to place center-lines on the highway, and **failure** to place signs restricting passing. In addition, Powell's allegation of negligent design is not so much that PennDOT engaged in "active" negligence by placing wrong signs, as for example was the case in *Crowell*, but rather in failing to place appropriate signs and in failing to paint traffic control lines. Thus, I believe that this Court's distinction in *Drumheller I* between "active" negligence

and mere failure to act was rejected by the Supreme Court in *Drumheller II sub silentio.*

It is not surprising that such a distinction between "active" negligence and "passive" negligence would be rejected, given that in traditional negligence analysis, it does not make much sense to distinguish between "active" and "passive" negligence. In order to establish a cause of action in negligence, a plaintiff must only prove 1) the existence of a duty on the part of the defendant; 2) a breach of that duty; 3) a causal connection between the breach and an injury to the plaintiff; and 4) actual damages. *Talarico v. Bonham*, 168 Pa. Cmwlth. 467, 650 A.2d 1192 (1994). Thus, the critical inquiry is whether a duty was breached. It matters not whether an immune party breached the duty by failing to act when it had an obligation to do so or whether the immune party acted in a manner in which it was obliged not to do so. The question of whether an immune party breached a duty must be distinguished from how the immune party breached the duty; the latter question having no relevance to a traditional tort analysis.

This court's analysis in *Drumheller I*, based upon the distinction between "active" negligence and "passive" negligence or negligence by omission, relied in great part upon language in *Crowell v. City of Philadelphia*, 531 Pa. 400, 613 A.2d 1178 (1992). In *Drumheller I*, this court quoted from *Crowell* that "the right to indemnity 'enures to the person who without *active fault* on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another for which he is only secondary liable.'" (emphasis added by this court in *Drumheller I* ). *Drumheller*

---

under the influence of alcohol, steered his vehicle into oncoming traffic in order to pass another vehicle. As a result, Drumheller crashed headlong into Vincent Powell's oncoming vehicle, killing Powell. Powell's wife sued Drumheller and the Pennsylvania Department of Transportation (PennDOT). Mrs. Powell alleged that PennDOT was negligent in

designing the road. She alleged that "the road where the crash occurred had no centerline designating the lanes of travel, no road markings or signs restricting passing and no shoulders or lateral clearance to provide room for emergency maneuvers." *Drumheller II*, 539 Pa. at 488–89, 653 A.2d at 621.

*I,* 621 A.2d at 1202, *quoting Crowell,* 531 Pa. at 406, 613 A.2d at 1183. However, the language of "active fault" utilized by the Supreme Court in *Crowell* was not intended to be in distinction to "passive" negligence or negligence by omission. *Crowell* utilized the language of "active negligence" in the context of explaining the difference between vicarious liability on the one hand, where liability is premised upon the relationship between the vicariously liable party and the party who actually caused the harm and, on the other hand, joint tortfeasor liability where liability is premised upon two parties actually engaging in some negligence (whether by commission or by omission) whose negligence concurrently causes harm to the plaintiff. Thus, the use of the term "active negligence" by the Court in *Crowell* is to be understood as referring to a party's **actual** negligence, necessary to impose joint liability, as opposed to merely **imputed** negligence in the situation where a non-negligent party is held liable for another's negligence by virtue of that party's relationship to the negligent other person under a theory of vicarious liability. The origin of this language "active fault" appears to have been the case of *Builders Supply Co. v. McCabe,* 366 Pa. 322, 325, 77 A.2d 368, 370 (1951) which used this language to also explain the difference between the theory of vicarious liability and the theory of joint tortfeasors.

Because I do not find support for the distinction between "active negligence" and "passive negligence" or negligence by omission, I would expressly reject PHA's argument that it cannot be held liable for its negligence when its negligence constitutes merely a failure to act. A failure to act in the face of a duty to do so constitutes a breach of duty for purposes of negligence law even in the context of immunity. *Byard v. Philadelphia Housing Authority,* 157 Pa.Cmwlth. 269, 629 A.2d 283, 286–87 (1993)(Lord, S.J., concurring), *allocatur denied,* 536 Pa. 618, 637 A.2d 278 (1993) ("It is, of course, settled law that the governmental agency or anyone else can be held to be a joint tortfeasor even if the negligence is based on a failure to act when a duty exists").