**Edwin MILLER, Jr. and Donna Miller, His Wife, Appellants,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Lykens Sewer, Water and Sanitation Department, and Wiconisco Township.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 1996.

Decided March 5, 1997.

Lawrence F. Barone, Harrisburg, for appellants.

Brooks R. Foland, Harrisburg, for appellees.

Before DOYLE and SMITH, JJ., and RODGERS, Senior Judge.

## OPINION

SMITH, Judge.

Edwin Miller, Jr. and his wife Donna Miller appeal from an order of the Court of Common Pleas of Dauphin County that granted a "motion for post-trial relief," in the nature of a directed verdict, on behalf of the Lykens Sewer, Water and Sanitation Department (the Authority). The issues as stated by the Millers are whether the trial court erred in granting the Authority's post-trial motion, where there were significant questions of fact to be resolved by the jury; where the Authority, pursuant to an emergency permit issued by the Department of Transportation (DOT), had a contractual obligation with DOT to repair Pottsville Street in Wiconisco Township, Dauphin County; and where the testimony at trial established that the Authority was given notice of a dangerous condition and therefore was not entitled to claim governmental immunity.

On December 30, 1989, Edwin Miller suffered severe spinal injuries in an accident that occurred when his vehicle struck a utility trench on Pottsville Street, a state road located in Wiconisco Township and owned by DOT. The trench was approximately 3 feet wide, 3 feet long and 12 to 18 inches deep. There were no warning lights, safety devices, signs or symbols near the location of the trench, which had been excavated by the Authority to repair damaged water lines. The Authority was permitted to conduct the repairs pursuant to the emergency permit issued by DOT. As a result of the accident, the Millers filed suit against DOT, the Authority and Wiconisco Township seeking damages; DOT and Wiconisco Township were later dismissed from the suit prior to trial. Following the trial, which ended with a deadlocked jury, the trial court granted the Authority's post-trial motion on the ground that the Authority did not have notice of a dangerous condition and therefore could not be held liable under any of the exceptions to governmental immunity.

The Millers contend before this Court that the trial court erred in granting a directed verdict for the Authority because competent evidence established that the trench was part of the Authority's utility facilities, that the Authority's negligent conduct in backfilling the trench with frozen material caused it to settle and that the Authority had actual notice that the backfill in the trench had settled. They maintain that whether the 12–to–18–inch drop in the trench constituted a dangerous condition of the Authority's facilities is a factual question for the jury, not a determination to be made by the trial judge.

This Court's scope of review of the trial court's entry of the directed verdict is limited to determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case. *Shedrick v. William Penn School Dist.*, 654 A.2d 163 (Pa.Cmwlth.), *appeal denied*, 542 Pa. 682, 668 A.2d 1142 (1995). In deciding whether to grant a directed verdict, the trial court must accept as true all facts and reasonable inferences drawn from the facts that support the nonmoving party's contentions, and the court must reject all evidence to the contrary. *Id.*

Section 8542(b) of the Judicial Code, *as amended*, 42 Pa.C.S. § 8542(b), provides in pertinent part:

The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(5) *Utility service facilities.*—A dangerous condition of the facilities of steam,

sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

In presenting their construction of the utility service facilities exception, the Millers assert that the phrase "of the facilities" refers not only to the water pipe but encompasses the repairs as well, including the trench.

█  In *County of Allegheny v. Dominijanni,* 109 Pa.Cmwlth. 484, 531 A.2d 562 (1987), the Court held that the term "right-of-way," as used in this exception included the strip of land on which the local agency constructed its utility service facilities. In *Dominijanni* the underlying suit was based on the agency's negligence, inter alia, in failing to use the proper backfill when installing a sewer pipe, which resulted in a landslide. Consequently, this Court concludes that the language "of the facilities ... and located within rights of way" in the utilities service facilities exception applies not only to the water pipes but also to the strip of land which the Authority disturbed to repair its water pipe.

█  There is also evidence of record to support the Millers' assertion that the Authority was negligent because it did not comply with DOT regulations in backfilling the trench, and the Authority was aware that the backfill in the trench had settled. Gerald Wible, DOT's district permit engineer, testified that the regulations found at 67 Pa.Code § 459.8 govern these subsurface operations and that a trench backfilled in accordance with these regulations, which require compacting every four inches, would not settle more than two inches. Wible further stated that frozen material should never be used in

backfill and that if DOT's regulations had been complied with, there would not have been eight to twelve inches of settling.

Dennis Rudisell, the Superintendent of the Authority, testified that he was aware of DOT's regulations as printed on the emergency permit. Rudisell stated that the trench was filled with modified backfill and was compacted every eight inches. He also stated that it was possible that there were frozen chunks in the backfill. William Reedinger, the Assistant Superintendent of the Authority, testified that there were, in fact, some frozen lumps in the backfill and that the trench did not settle for the first week because everything remained frozen. Reedinger further stated that when it rained, the frozen backfill thawed and began to settle and had to be checked every day. This testimony, when viewed in a light most favorable to the Millers, is sufficient to establish that the trench was part of the Authority's utility facilities within the meaning of the exception, that the Authority's negligent conduct caused the backfill in the trench to settle and that the Authority was aware that the backfill had, in fact, settled and posed a risk to vehicular traffic.

In *Gall by Gall v. Allegheny County Health Department,* 521 Pa. 68, 555 A.2d 786 (1989), the Supreme Court stated that under a plain reading of the utility service facilities exception, a local agency is not entitled to immunity where there is a dangerous condition of the facility located within its right-of-way if the plaintiff shows that the dangerous condition created a reasonably foreseeable risk and that the agency had notice of the dangerous condition. More recently, in *Finn v. City of Philadelphia,* 541 Pa. 596, 664 A.2d 1342 (1995), the Supreme Court reviewed recent case law relating to the real property and sidewalk exceptions to governmental immunity, Sections 8542(b)(3) and (7) of the Code, 42 Pa.C.S. § 8542(b)(3) and (7), respectively.[1]

In *Finn* the Supreme Court noted that a common thread running throughout these exceptions is that liability depends first on the

---

1. In *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992), the Supreme Court stated that immunity provisions are to be construed

consistently. The *Finn* rationale must therefore be applied as well to the utility service facilities exception to governmental immunity.

strictly legal determination that the injury was caused by a condition of the property itself, which has its origin or source in the property. Only after that determination is made does a factual determination or "jury question" arise as to whether that condition was dangerous. Here, the Millers have presented sufficient evidence to raise a jury question as to whether the Authority's negligent conduct in backfilling the trench created a dangerous condition and whether that condition created a reasonably foreseeable risk of the type of injuries sustained by Mr. Miller.

■ The Millers alternatively contend that the emergency permit issued to the Authority by DOT constitutes a contract by which the Authority accepted certain road repair and maintenance obligations in exchange for the right to excavate the state street in order to make repairs to its utility equipment. They argue that the Authority also may be held liable under the streets exception to governmental immunity set forth in Section 8542(b)(6) of the Judicial Code, 42 Pa.C.S. § 8542(b)(6). Under the streets exception, a local agency may be held liable for a dangerous condition of a street owned by a Commonwealth agency under certain circumstances.

In *Phillips v. City of Philadelphia,* 148 Pa.Cmwlth. 175, 610 A.2d 509 (1992), this Court noted that all exceptions to immunity are to be narrowly construed. In that case the Court noted that in order for the streets exception to apply, the local agency must have entered into a written contract with a Commonwealth agency for the maintenance and repair of the street in question. *See* Section 8542(b)(6)(ii)(A) of the Judicial Code, 42 Pa.C.S. § 8542(b)(6)(ii)(A). Although the emergency permit issued by DOT to the Authority requires compliance with DOT regulations, including backfilling the trench and surface restoration, it does not constitute a written contract within the meaning of the streets exception to maintain and repair Pottsville Street.[2]

In view of the foregoing discussion, this Court concludes that the trial court erred in granting a directed verdict in favor of the Authority. The order of the trial court is reversed, and this case is remanded for retrial or other appropriate proceedings.

### ORDER

AND NOW, this 5th day of March, 1997, the order of the Court of Common Pleas of Dauphin County is reversed, and this case is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

---

2. *See Verna by Verna v. Commonwealth,* 149 Pa. Cmwlth. 449, 613 A.2d 174 (1992), *appeal denied,* 533 Pa. 647, 622 A.2d 1378 (1993) (absent an express written contract for repair and mainte-

nance, duties imposed under statutes or regulations do not amount to "care, custody and control" for purposes of establishing liability under the streets exception).