Wanda WILLIAMS, as Parent and Natural Guardian of Jasmine Williams and Shante Williams, minor children and Wanda Williams, Individually, Appellant

v.

PHILADELPHIA HOUSING AUTHORITY and City of Philadelphia.

Commonwealth Court of Pennsylvania.

Argued March 1, 2005.
Decided April 28, 2005.

---

Robert P. Stein, Bala Cynwyd, for appellants.

Susanna Randazzo, Philadelphia, for appellee, Philadelphia Housing Authority.

Alan C. Ostrow, Philadelphia, for appellee, City of Philadelphia.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Wanda Williams and her two minor children, Jasmine and Shante, (collectively Williams) appeal from two orders of the Court of Common Pleas of Philadelphia County (trial court) that sustained the preliminary objections of the City of Philadelphia (City) and the Philadelphia Housing Authority (Authority) to their complaint. Williams claimed that the City and the Authority negligently failed to provide security in the Martin Luther King Housing Project (Housing Project) as was necessary to prevent criminal assaults by third parties. The trial court held that this claim did not fall within any of the exceptions to governmental or sovereign immunity and, thus, dismissed Williams' complaint.

The facts, as averred in Williams' amended complaint, are as follows.[1] On August 18, 1998, at approximately 11:00 a.m., Warren Anderson, who resided at the Housing Project with his mother, shot Jasmine Williams. The Williams family were visitors to the Housing Project and were leaving when Jasmine was shot at the elevator. Anderson's residence at the Housing Project violated Authority rules because of his felony convictions, and these convictions were known to the City and the Authority. His presence as well as defective security devices, such as malfunctioning security cameras, inoperative turnstiles and an unmanned security booth, caused the injury to Jasmine Williams. The complaint asserted that the City and the Authority should be held jointly and severally liable for this event because of their negligent failure to maintain security at the Housing Project.

Both the City and the Authority filed preliminary objections in the nature of a demurrer to the complaint, raising the de-

---

1. On February 10, 2004, Williams filed a complaint against the City and the Authority claiming that both were negligent in failing to protect Jasmine Williams against an assault by a third party. Williams sought compensatory and punitive damages. After the City and the Authority filed preliminary objections on February 25, 2004, and February 26, 2004, respectively, Williams filed an Amended Complaint on March 16, 2004, wherein Williams withdrew the claim for punitive damages against the Authority, and sought such damages from the City alone. The Authority and the City again filed preliminary objections in the nature of a demurrer to the amended complaint.

fense of governmental and sovereign immunity.[2] Both defendants asserted that the criminal act of a third party, Anderson, was the superseding cause of Jasmine Williams' injuries, not the physical condition of the Housing Project. In addition, they contended that a failure to police or supervise property does not fall within any exceptions to governmental or sovereign immunity.

On May 26, 2004, the trial court sustained the City's preliminary objections, dismissing the City as a party to the action. On June 8, 2004, the trial court sustained the Authority's preliminary objections and dismissed Williams' complaint with prejudice.[3] Williams now appeals to this Court.

In her appeal,[4] Williams contends that the trial court erred in sustaining the City's preliminary objections because the presence of Anderson, the unmanned security booth, and malfunctioning security camera were physical defects at the Housing Project that triggered the real property exception to governmental immunity set forth under the act commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541–8564. Williams asserts that these omissions also made the Authority liable under the real property exception to the act com-

---

**2.** Pursuant to Pennsylvania Rule of Civil Procedure 1030,

> (a) ... all affirmative defenses including but not limited to the defenses of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, immunity from suit, impossibility of performance, justification, laches, license, payment, privilege, release, res judicata, statute of frauds, statute of limitations, truth and waiver shall be pleaded in a responsive pleading under the heading "New Matter." A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

Pa. R.C.P. No. 1030. However, a court can address the defense of immunity on preliminary objections if the plaintiff has not objected. *E–Z Parks, Inc. v. Larson*, 91 Pa.Cmwlth. 600, 498 A.2d 1364 (1985). In the case *sub judice*, Williams did not object to the City's or the Authority's preliminary objections based on Pa. R.C.P. No. 1030. In addition,

> the defense of governmental immunity is an absolute unwaivable defense, not subject to any procedural device that could render the governmental agency liable beyond exceptions granted by the legislature.

*Lyons v. City of Philadelphia*, 159 Pa.Cmwlth. 107, 632 A.2d 1006, 1010 (1993). Thus, we conclude that the trial court appropriately considered the defense of sovereign and governmental immunity in the context of ruling on preliminary objections.

**3.** The trial court's order of May 26, 2004, sustaining the City's preliminary objections was issued by Judge Mark I. Bernstein; the June 8, 2004, order sustaining the Authority's preliminary objections was issued by Judge Arnold New. Thereafter, on July 19, 2004, Judge New issued an opinion in support of his order in favor of the Authority, which opinion was adopted by Judge Bernstein in support of the trial court's order to sustain the City's preliminary objections.

**4.** Initially, we note that our scope of review of a decision by a trial court is limited to a determination of whether the trial court abused its discretion, committed an error of law or whether constitutional rights were violated. *Long v. Thomas*, 152 Pa.Cmwlth. 416, 619 A.2d 394 (1992). In an appeal challenging the sustaining of preliminary objections in the nature of a demurrer, we must determine whether on the facts alleged the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore*, 157 Pa. Cmwlth. 243, 629 A.2d 270, 271 n. 3 (1993). The test for preliminary objections is whether it is clear and free from doubt from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish a right to relief. *Bower v. Bower*, 531 Pa. 54, 611 A.2d 181 (1992). However, any argumentative allegations or expressions of opinion need not be accepted as true. *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1976).

monly referred to as the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521–8528.

■ The threshold question in a case of governmental or sovereign immunity is whether the plaintiff would have an action in damages at common law or statute if the defendant could not claim the defense of governmental or sovereign immunity. If so, the plaintiff must then show that the negligent act of the state or local agency is one for which immunity has been waived. 42 Pa.C.S. § 8542(a);[5] 42 Pa.C.S. § 8522(a).[6]

In their preliminary objections, the City and the Authority did not concede that Williams would have a cause of action at common law against a private landowner who failed to protect a visitor against a criminal act of one of its residents. Nevertheless, for purposes of their defense they effectively conceded this threshold question, choosing, instead, to focus their argument on the question of whether a failure to protect Jasmine Williams against harm falls within the real estate exception to governmental or sovereign immunity.

■ The real property exception in the Tort Claims Act provides that a local agency may be held liable for negligent acts relating to the "care, custody or control of real property in the possession of the local agency. . . ." 42 Pa.C.S. § 8542(b)(3).[7] The Sovereign Immunity Act allows a Commonwealth agency to be held liable for a "dangerous condition of Commonwealth agency real estate. . . ." 42 Pa.C.S.

5. It provides in pertinent part as follows:

§ 8542. Exceptions to governmental immunity

(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa.C.S. § 8542(a)(1)-(2).

6. It provides in pertinent part,

(a) Liability imposed.—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in sub-

section (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 Pa.C.S. § 8522(a).

7. It states in relevant part:

(3) The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks.

42 Pa.C.S. § 8542(b)(3).

§ 8522(b)(4).[8] A municipality's liability under the real property exception is broader than that of the sovereign because it includes property under its "care, custody or control." *Grieff v. Reisinger,* 548 Pa. 13, 17 n. 3, 693 A.2d 195, 197, n. 3 (1997). Nevertheless, the real estate exception operates similarly, whether in the context of sovereign or governmental immunity.[9]

■ The essentials of the real estate exception can be summarized as follows. The negligence must make the real property itself unsafe for its intended use. *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989). Stated otherwise, the negligence must create a defect in the real estate. *Id.* Further, it must be the dangerous condition or defect in the real estate that causes the injury. If a defect merely facilitates an injury to be caused by the acts of other persons, the defect or dangerous condition is not actionable. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987). Finally, as is the case for each exception to governmental or sovereign immunity, the real estate exception must be narrowly construed to effect the General Assembly's intent to insulate state and local agencies from tort liability. *Id.* at 361, 523 A.2d at 1123. With these principles in mind, we consider whether the trial court correctly dismissed Williams' complaint with respect to each named defendant.

■ In her complaint, Williams alleged that the City knew, or should have known, of Anderson's felony convictions and that he would be likely to take untoward advantage of the security lapses at the Housing Project. Further, because the security devices at the Housing Project were not working, this constituted a defect in the real property. Thus, Williams asserts that the trial court erred in dismissing her complaint.

The City rejoins that its right to enter onto property does not give it "possession" of that property within the meaning of the Tort Claims Act.[10] We agree. This princi-

---

**8.** It provides in relevant part:

> (4) A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

> 42 Pa.C.S. § 8522(b)(4)

**9.** The terms of the Tort Claims Act and the Sovereign Immunity Act are to be construed consistently with each other. *Kilgore v. City of Philadelphia,* 553 Pa. 22, 25, n. 2, 717 A.2d 514, 516, n. 2 (1998). Thus, real estate exception precedent is used interchangeably in sovereign and governmental immunity cases. *See, e.g., Finn v. City of Philadelphia,* 541 Pa. 596, 664 A.2d 1342 (1995) (relying on sovereign immunity precedent to evaluate a real estate exception claimed in a governmental immunity case) and *Downing v. Philadelphia Housing Authority,* 148 Pa.Cmwlth. 225, 610 A.2d 535 (1992) (relying on governmental immunity precedent to evaluate real estate exception in a sovereign immunity case).

**10.** In her complaint, Williams asserted that the City, by express and unequivocal legislative declaration, "owned, operated, leased, possessed, maintained and/or controlled" the Housing Project through the City of Philadelphia Redevelopment Authority." Williams' Second Amended Complaint at ¶ 9. In addition, Williams averred that the Authority worked as a partner, or in conjunction with the City of Philadelphia to manage the Housing Project. *Id.* at ¶ 13, 610 A.2d 535. In its brief to this Court, the Authority notes, "[Williams] erroneously allege[s] in [her] brief to this court that the City of Philadelphia is the owner of the [Housing Project] which was under the care, custody and control of [the Authority]. Authority's Brief at 9, note 3. In fact, the Authority admits ownership of the Housing Project in 1998. *See id.* at 3, note 1, 610 A.2d 535.

ple that has been firmly established by this Court. *See, e.g., York Redevelopment Authority v. Keener,* 101 Pa.Cmwlth. 464, 516 A.2d 832 (1986). However, even assuming, *arguendo,* the City did have possession of the Housing Project, it cannot be held liable for the criminal acts of third parties under our Supreme Court's holding in *Mascaro.*

In *Mascaro,* a juvenile being held prisoner in the city's Youth Study Center escaped because of defective locks. He then proceeded to burglarize a private home, assaulting its residents, the Mascaro family. Our Supreme Court held that the City could not be held liable for the juvenile's criminal acts even if some defect in the condition of the city-owned property facilitated the assault. *Mascaro* is dispositive here.[11]

The trial court correctly concluded that Williams did not allege facts to show that the shooting of Jasmine Williams resulted from a defect in the property; at best, the complaint averred that dangerous condition in the real property facilitated Anderson's criminal assault on her. The failure to maintain the security devices was superseded by Anderson's criminal assault on Jasmine Williams.[12] Accordingly, we hold that governmental immunity barred Williams' claim against the City.[13]

■ Williams' claim against the Authority is governed by the Sovereign Immunity Act because the Authority is a Commonwealth agency. *See Crosby v. Kotch,* 135 Pa.Cmwlth. 470, 580 A.2d 1191 (1990).[14] Williams' complaint asserted that the Authority was liable for the shooting of

---

11. The Supreme Court has not deviated from the principle established in *Mascaro* that where criminal acts of a third party are the superseding cause of an injury facilitated by a condition of a municipality's real property, the municipality cannot be held liable. *See, e.g., Chevalier v. City of Philadelphia,* 516 Pa. 316, 532 A.2d 411 (1987) (assailant's attack on City-owned parking lot did not give rise to liability where attack was facilitated by inadequate lighting and lack of adequate security); *Johnson v. Southeastern Pennsylvania Transportation Authority,* 516 Pa. 312, 532 A.2d 409 (1987) (a SEPTA passenger assaulted in a tunnel after leaving a train could not maintain action against City in spite of the City's knowledge that tunnels were used as hangouts by criminal elements). Prior to *Mascaro,* this Court held repeatedly that local agencies are not liable for criminal acts of third parties under the real property exception, even if a defect in the property contributed to the occurrence of the act. *See, e.g., Vann v. Board of Education of the School District of Philadelphia,* 76 Pa.Cmwlth. 604, 464 A.2d 684 (1983) (wherein school board was found not liable for criminal assault upon a minor that took place on school grounds that had inadequate lighting and was in other ways inadequately secured).

12. It is not clear, however, that perfectly maintained security devices would have prevented Anderson's deed. Security measures of the type installed at the Housing Project are installed to protect residents from the entry of unwanted visitors or trespassers. Even if Anderson should not have been residing at the Housing Project, it is not alleged in the complaint that he was not permitted to visit his mother in her home. Even had a security guard been present, it must be presumed that Anderson's mother would have authorized the guard to admit her son to enter the apartment.

13. We agree also that William's complaint did not allege facts sufficient to show that the City had "possession" of the Housing Project sufficient to create liability under the real property exception to governmental immunity.

14. The Authority points out that the only arguable exception is located in section 8522(b)(4), which states in pertinent part,

(4) Commonwealth real estate, highways and sidewalks.—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

Jasmine Williams for the same reasons asserted in her attempt to hold the City liable, *i.e.*, the presence of Anderson and failure to maintain security devices at the Housing Project. The trial court sustained the Authority's preliminary objections on the basis of *Battle v. Philadelphia Housing Authority*, 406 Pa.Super. 578, 594 A.2d 769 (1991).

In *Battle*, the plaintiff was attacked in the lobby of the Raymond Rosen Project, which was owned by the Authority, in the presence of security guards who failed to come to his aid. *Id.* at 770. The plaintiff did not assert that his injuries resulted from a defect in the building itself but, rather, that they resulted from the failure of the Authority's security staff to prevent a third person's attack upon him. The Superior Court held that the real estate exception was inapplicable and affirmed the trial court's dismissal of the complaint. *Id.* at 772. Noting that Williams alleged, *inter alia*, in her complaint that the Authority "fail[ed] to provide and maintain safe and secure premises,"[15] the trial court concluded that the holding in *Battle* required the dismissal of Williams' complaint.

Although not binding on this Court, *Battle* is persuasive authority, and its reasoning was properly applied to this case. The defects in the property alleged by Williams did not cause the injury; rather, it was the act of a third party, rather than any defect in the property itself, that caused the injuries.[16]

Williams argues that our holding in *Wilson v. Philadelphia Housing Authority*, 735 A.2d 172 (Pa.Cmwlth.1999), wherein we found the real estate exception to apply, cannot be distinguished from her claim. In *Wilson*, the plaintiff was injured on Authority property when a third party pushed her, causing her to fall and hit the stump of a metal pole protruding from the ground, thereby injuring her ankle. This Court found that even though a third party set the action in motion that caused the appellant to fall, it was not the superseding cause of the injury; rather, a metal pole caused the injury. Thus, we explained that "[e]ven though a third party caused the accident, unless it can be shown that the third party's conduct was an intervening superseding cause, the [Authority] would still be liable for its negligent conduct." *Id.* at 175–176.

*Wilson* is distinguishable. Jasmine Williams' injuries were caused by a bullet, not by a physical feature of the Housing Project. There is no way to read the complaint to escape the conclusion that the cause of the injuries was anything other than the superseding act of a third party, namely Anderson. Thus, the preliminary objections of the Authority were properly granted.

For these reasons, we affirm the trial court's orders dismissing the complaint.

Judge PELLEGRINI concurs in the result only.

---

42 Pa.C.S. § 8522(b)(4).

**15.** Williams' Second Amended Complaint at ¶ 41(a).

**16.** *See Chambers v. Southeastern Pennsylvania Transportation Authority*, 128 Pa.Cmwlth. 368, 563 A.2d 603 (1989) (a passenger injured in a fight with several rowdy youths on a SEPTA subway was not entitled to assert the real property exception to sovereign immunity because it was an unknown third party, not a defect in the property itself, that caused injury); *Alexander v. Department of Public Welfare*, 137 Pa.Cmwlth. 342, 586 A.2d 475 (1991) (a patient in a DPW-operated facility, who was abducted and then raped, could not assert the real estate exception on the basis of inadequate security because injuries were not caused by the physical characteristics of the facility but by an intervening factor, *i.e.*, the assailant).

## ORDER

AND NOW, this 28th day of April, 2005, the orders of the Court of Common Pleas of Philadelphia County dated May 26, 2004, and June 8, 2004 in the above-captioned matter are hereby affirmed.