**Bernard GURNARI, Appellant**

v.

**LUZERNE COUNTY HOUSING AUTHORITY.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 14, 2006.

Decided Nov. 17, 2006.

Joseph F. Sklarosky, Sr., Forty Fort, for appellant.

Frank J. Bolock, Scranton, for appellee.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Bernard Gurnari (Gurnari), appeals from the post-trial order of the Court of Common Pleas of Luzerne County (trial court), directing judgment in favor of the Luzerne County Housing Authority. The trial court held that Gurnari failed to provide evidence on which a finding could be made that the Housing Authority was liable under the common law of negligence, which is the threshold burden of a plaintiff seeking damages from a local government agency protected by governmental immunity. Finding no error in the trial court's decision, we affirm.

On or about February 1, 1995, Gurnari, an Emergency Medical Technician (EMT) with the Hanover Township Community Ambulance, responded to an emergency call at Lee Park Towers, a housing complex for elderly persons owned and operated by the Housing Authority. Consistent with past practice, the ambulance crew pulled up to the loading dock and walked up the ramp with a gurney, to one of two garage doors, in order to gain entrance to the facility. Because the garage door was locked, a maintenance man let Gurnari in through a side door, and the two men proceeded to lift the garage door from the inside. In the process, Gurnari was struck in the head by a metal bar that dropped from the garage door. It was never established whether the metal object was a tool

or part of the garage door.[1]

Gurnari commenced a negligence action against the Housing Authority on April 19, 1997, which was amended on May 15, 1997. After discovery, Gurnari and the Housing Authority each filed motions for summary judgment that were denied. Accordingly, a jury trial was held from March 29, 2005, to April 1, 2005. At the conclusion of Gurnari's case, the Housing Authority moved for compulsory nonsuit, but its motion was denied. The case went to the jury, which was unable to reach a verdict after two days. Accordingly, the trial court declared a mistrial.

On April 8, 2005, the Housing Authority filed a post-trial motion pursuant to Pa. R.C.P. 227.1(a), asserting the same legal arguments that had been presented in its motion for summary judgment and in its motion for compulsory nonsuit. On September 26, 2005, the trial court granted the post-trial motion of the Housing Au-

thority and entered judgment in its favor, acknowledging that it erred in not granting the Housing Authority's motion for compulsory nonsuit.[2]

∎ Gurnari appealed the trial court's order directing a verdict in favor of the Housing Authority. Gurnari raises three issues to this Court.[3]

First, Gurnari contends that the trial record, when viewed as a whole, contains sufficient evidence to allow a jury to conclude that the Housing Authority knew or should have known that a dangerous condition existed on its premises. Second, he contends that the trial record contains sufficient evidence to allow a jury to conclude that Gurnari was injured by a dangerous condition of real property under the care, custody and control of the Housing Authority, thereby bringing his cause of action within the real estate exception to sovereign immunity.[4] Third, Gurnari con-

---

1. At trial, neither Gurnari, nor the only other available witness, Marge Baker, could identify the source of the metal bar that caused Gurnari's injuries. Baker, a fellow EMT that was present at the time of the incident, testified to the following:

   Q. Okay. Now Ms. Baker, when the bar that you say hit Mr. Gurnari—you said at the time of the deposition that you thought it was a crowbar, a tool?
   A. I don't think I said crowbar. I felt it was a tool because of the weight of it, the sound it made when it hit the concrete floor.
   Q. Well, I remember reading in your deposition you said it wasn't part of the door.
   A. I didn't feel it was part of the door. The door was light colored, and this was black.
   Reproduced Record at 6a (R.R. ——).

2. According to the trial court's opinion, the court erred in not granting the compulsory nonsuit sought by the Housing Authority during trial, and as such, corrected the error, pursuant to Pa.R.C.P. 227.1, directing judgment in favor of the Housing Authority.

3. This Court's standard of review of the trial court's entry of a directed verdict is limited to

determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case. In deciding whether to affirm, this Court must accept as true all facts and reasonable inferences to be drawn from the facts that support the nonmoving party's position. *Miller v. Commonwealth, Department of Transportation*, 690 A.2d 818, 819 (Pa.Cmwlth.1997).

4. In *Williams v. Philadelphia Housing Authority*, 873 A.2d 81 (Pa.Cmwlth.2005), this Court explained the essentials of the real estate exception to sovereign immunity:

   The negligence must make the real property itself unsafe for its intended use ... Stated otherwise, the negligence must create a defect in the real estate ... Further, it must be the dangerous condition or defect in the real estate that causes the injury. If a defect merely facilitates an injury to be caused by the acts of other persons, the defect or dangerous condition is not actionable ... Finally, as is the case for each exception to governmental or sovereign immunity, the real estate exception must be narrowly construed to effect the General Assembly's in-

tends that the doctrine of *res ipsa loquitur* would allow the jury to infer negligence on the part of the Housing Authority, and it was error for the trial court to hold the doctrine not to be applicable.

■ The threshold question in any case where sovereign or governmental immunity protects a defendant is whether the plaintiff would have had an action in negligence at common law. *Williams v. Philadelphia Housing Authority*, 873 A.2d 81, 85 (Pa.Cmwlth.2005). Accordingly, in the present case, it must be shown that the evidence Gurnari presented at trial was sufficient to demonstrate that the Housing Authority was negligent at common law.

■ At common law, as the trial court instructed the jury, the Housing Authority had to know or have reason to know of a dangerous condition on its real property in order to be held liable. *See* Section 342 of the Restatement (Second) of Torts.[5] This charge to the jury was requested by the Housing Authority relying on *Commonwealth, Department of Transportation v. Patton*, 546 Pa. 562, 686 A.2d 1302 (1997). In *Patton*, our Supreme Court held that a Commonwealth agency must have actual or constructive notice of the alleged defect or dangerous condition, when a plaintiff alleges that such defect or dangerous condition in real estate caused his injury. *Id.* at 565, 686 A.2d at 1304. The Supreme Court explained:

This requirement of notice is well established in the common law of this Commonwealth and, if any relevant section of the Restatement (Second) of Torts does not incorporate the requirement, we will interpret it as requiring notice, if possible, or we must conclude that it does not comport with Pennsylvania Law.

*Id.* at 567, 686 A.2d at 1305.

■ It is clear from the record that the Housing Authority did not have actual notice of the alleged defect in the garage door. Nevertheless, the Housing Authority may be held liable if it had constructive notice of the problem.[6] Constructive notice requires that the dangerous condition be apparent upon reasonable inspection. *Patton*, 546 Pa. at 566, 686 A.2d at 1304. Gurnari contends that the Housing Authority should have known of the alleged dangerous condition presented by the garage door because it would have been apparent upon a reasonable inspection. He argues, further, that if the Housing Authority had adopted a formal inspection policy with respect to the garage door, the accident would not have occurred. However, Gurnari provided no evidence, either by witness testimony or by expert report, to show that a reasonable inspection of the premises would have revealed a dangerous condition or structural defect. As such, the trial court was correct in finding that

tent to insulate state and local agencies from tort liability ...
*Id.* at 86 (citations omitted).

5. It states:
A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
(c) the licensees do not know or have reason to know of the condition and the risk involved.
Restatement (Second) of Torts § 342 (1965).

6. The gist of Appellant's brief is that Appellee "should have known" of the alleged dangerous condition presented by the garage door, which Appellant equates to "constructive knowledge."

Gurnari failed to provide evidence to establish that the Housing Authority had actual or constructive notice of an alleged defect on its property.

■ Gurnari also argues on appeal that the trial court erred in finding the doctrine of *res ipsa loquitur* was not applicable in this case. We disagree. In the seminal case of *Gilbert v. Korvette's, Inc.*, 457 Pa. 602, 611, 327 A.2d 94, 99 (1974), the Pennsylvania Supreme Court explained that *res ipsa loquitur* "is neither a rule of procedure nor one of substantive tort law. It is only a shorthand expression for circumstantial proof of negligence—a rule of evidence." As such, the Court adopted the evidentiary rule articulated in Section 328D of the Restatement (Second) of Torts, which provides:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

Restatement (Second) of Torts § 328D (1965). The Restatement makes clear that to get to the jury, a plaintiff must by a preponderance of the evidence prove all of the elements enumerated in subsection (1)

of Section 328D. *Hollywood Shop, Inc. v. Pennsylvania Gas and Water Co.*, 270 Pa.Super. 245, 411 A.2d 509, 511 (1979).

In this case, Gurnari's evidence was simply insufficient to establish that the alleged negligence was "within the scope of the defendant's duty to the plaintiff." Restatement (Second) of Torts § 328D(1)(c) (1965). Gurnari could not establish by a preponderance of the evidence that the metal object that struck him was part of the Housing Authority's garage door. In fact, Gurnari's co-worker, who was the only other available witness, testified during her deposition that she "didn't feel [the object] was part of the door. The door was light colored, and [the object] was black." R.R. 6a. Given the dearth of any evidence to connect the falling object to the Housing Authority, as opposed to "other responsible causes," the trial court did not err in finding that Gurnari was not entitled to an inference of negligence.

Because we conclude that Gurnari did not have an action in negligence at common law, we need not address whether the metal bar that struck Gurnari derived or originated from the realty itself, so as to fall within the real estate exception to sovereign immunity.

For the foregoing reasons, we affirm the decision of the trial court granting judgment in favor of the Housing Authority.

### ORDER

AND NOW, this 17th day of November, 2006, the order of the Court of Common Pleas of Luzerne County dated September 26, 2005, in the above captioned matter is hereby AFFIRMED.