# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Metropolitan Edison Company | : | |
| | : | |
| v. | : | No. 2188 C.D. 2014 |
| | : | Argued: September 17, 2015 |
| City of Reading, | : | |
| Appellant | : | |

**BEFORE:   HONORABLE DAN PELLEGRINI, President Judge**
**HONORABLE RENÉE COHN JUBELIRER, Judge**
**HONORABLE P. KEVIN BROBSON, Judge**

**OPINION BY JUDGE BROBSON                    FILED:  October 15, 2015**

The City of Reading (Reading) appeals from an order of the Court of Common Pleas of Berks County (trial court), which held that Reading was not immune from liability in a suit initiated by Metropolitan Edison Company (Met-Ed).  The trial court further held that Reading was negligent and awarded Met-Ed $53,000 in damages.  We now reverse.

On July 7, 2009, Reading began excavating a site located on the 200 block of North 5th Street, Reading, Pennsylvania.  (Reproduced Record (R.R.) at 416a.)  The goal of the excavation was to uncover Reading's sanitary sewer main in order to conduct a repair.  (*Id.*)  During the course of the excavation, Reading encountered an electrical duct bank[1] owned by Met-Ed.  (*Id.* at 417a.)  Reading employees observed that the duct bank was in poor condition and was

---

[1] An electrical duct bank is "a series of conduits or ducts" comprised of PVC or terra cotta piping, which encases underground electrical wire.  (R.R. at 293a-94a.)

unstable. (*Id.* at 296a-97a, 349a.) Specifically, part of the concrete encasing the duct bank had collapsed. (*Id.* at 332a.) Reading contacted Met-Ed's Supervisor of Regional Operations, Kenneth Sweitzer, to notify Met-Ed of the condition of its duct bank. (*Id.* at 331a.) Mr. Sweitzer contacted Met-Ed's contractor, Allen Homan, to inspect and repair the duct bank. (*Id.* at 332a.) Mr. Homan completed the repair of the duct bank on July 10, 2009. (*Id.* at 298a.) Reading resumed its excavation work, but, on July 15, 2009, Reading employees noticed that the duct bank was falling away from the wall. (*Id.* at 420a.) Mr. Homan returned to the site and found that the excavated hole was deeper and there was further erosion, but the repaired duct bank was still intact. (*Id.* at 298a-99a.) There was no shoring in place to prevent further erosion. (*Id.* at 299a.) Reading continued its excavation work, but, on July 20, 2009, the duct bank fully collapsed. (*Id.* at 352a.) Mr. Homan conducted an extensive repair of the duct bank, which involved the removal of the collapsed portions of the duct bank and the installation of a new duct bank. (*Id.* at 302a.)

Met-Ed filed a complaint with the trial court, alleging that Reading's negligence caused the collapse of the duct bank. Reading filed a motion for summary judgment, asserting that it was immune from liability pursuant to Section 8541 of what is commonly referred to as the Political Subdivision Tort Claims Act (Act).[2] The trial court denied Reading's motion and conducted a bench trial. During the bench trial, Met-Ed presented the testimony of Mr. Homan. Mr. Homan testified that after completing the first repair of the duct bank, he informed the Sewer Department Supervisor, John Farrier, that Reading's

---

[2] 42 Pa. C.S. § 8541.

excavation and repair needed to be completed as soon as possible, so that the hole could be backfilled. (*Id.* at 304a.) Mr. Farrier indicated that the work would be completed by the end of the week. (*Id.*) The excavated hole was not backfilled as of July 15, 2009, and Mr. Homan again warned Mr. Farrier that Reading's work needed to be completed quickly. (*Id.* at 305a.) Mr. Homan indicated that if the hole was not promptly backfilled, "bad things" could happen. (*Id.*)

On October 27, 2014, the trial court issued an amended verdict in favor of Met-Ed and adopted Met-Ed's proposed findings of fact and conclusions of law. The trial court issued an opinion on January 20, 2015, in which it concluded that Reading was not immune from liability. The trial court explained that Reading's negligent conduct created a dangerous condition of the property. After Mr. Homan's first repair of the duct bank, Reading was aware of the "unstable conditions of dirt and soil located underneath Met-Ed's [duct] bank and the potential danger if the [duct] bank was not adequately supported." (Trial Ct. Op. at 6.) Reading had sufficient notice to install shoring and correct the dangerous conduct before the foreseeable duct bank collapse on July 20, 2009. Accordingly, Reading was not immune from liability. The trial court further held that Reading's actions were negligent, and it awarded Met-Ed damages in the amount of $53,000. Reading appealed to this Court.

The sole issue on appeal[3] is whether Reading was immune from liability in the negligence suit initiated by Met-Ed. "Generally, local agencies are

---

[3] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Swift v. Dep't of Transp.*, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007), *appeal denied*, 950 A.2d 270 (Pa. 2008).

immune from tort liability under Section 8541 of the . . . Act." *Gibellino v. Manchester Twp.*, 109 A.3d 336, 342 (Pa. Cmwlth. 2015). There are, however, exceptions to this immunity. *See* 42 Pa. C.S. § 8542. Section 8542(b)(5) of the Act, 42 Pa. C.S. § 8542(b)(5), provides:

> (b) **Acts which may impose liability.--**The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> > (5) *Utility service facilities*.--A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

"Because of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed." *Lockwood v. City of Pittsburgh*, 751 A.2d 1136, 1139 (Pa. 2000). Under Section 8542(b)(5) of the Act, "liability depends first on the strictly legal determination that the injury was caused by a condition of the property itself, which has its origin or source in the property." *Miller v. Dep't of Transp.*, 690 A.2d 818, 820-21 (Pa. Cmwlth. 1997). The term right-of-way, as it relates to the exception provided in Section 8542(b)(5) of the Act, "include[s] the strip of land on which the local agency construct[s] its utility service facilities." *Id.* at 820.

Reading cites *Metropolitan Edison Company v. Reading Area Water Authority*, 937 A.2d 1173 (Pa. Cmwlth. 2007), in support of its contention that it is

4

immune from liability.[4]  In *Metropolitan Edison Company*, employees of the Reading Area Water Authority (water authority) struck and damaged a Met-Ed utility line during the course of an excavation.  Met-Ed filed a suit against the water authority, alleging that the water authority failed to take reasonable steps to protect Met-Ed's property pursuant to the Pennsylvania "One Call Act."[5]  The water authority moved for summary judgment, asserting that it was immune from liability.  The trial court granted the water authority's motion, and Met-Ed appealed to this Court.  On appeal, Met-Ed argued that "the design, construction, installation and maintenance of [the water authority]'s water line, in close proximity to Met-Ed's utility line, constitute[d] a dangerous condition of [the water authority]'s water distribution system."  *Metro. Ed. Co.*, 937 A.2d at 1175.  This Court explained that to qualify for immunity under Section 8542(b)(5) of the Act, "the allegedly dangerous condition must have derived or originated from, or had its source as the local agency's realty."  *Id.*  Met-Ed failed to allege that the dangerous condition originated with the water line.  Instead, this Court reasoned that "the dangerous condition, as alleged, *originated with the conduct of [the water authority]'s employees*."  *Id.* (emphasis added).  The water authority, therefore, was immune from liability.  Reading argues that the dangerous condition in the instant matter also originated with the conduct of its employees, and, thus, it is immune from liability.  We agree.

---

[4] Reading also argues that the "policy implications of a local agency being liable for its employees' excavation activities require a reversal of the trial court's ruling."  (Reading Br. at 23.)

[5] Act of December 10, 1974, P.L. 852, *as amended*, 73 P.S. §§ 176-86.

5

Here, the trial court noted that the dangerous condition was "the unstable condition[] of the dirt and soil located underneath Met-Ed's [duct] bank." (Trial Ct. Op. at 6.) The dangerous condition, however, did not originate from Reading's facilities. Rather, the dangerous condition derived from the conduct of Reading's employees during the excavation. Specifically, Reading's employees removed the soil beneath the duct bank, did not use support or shoring to stabilize the duct bank, and did not promptly backfill the excavated hole. In this respect, the instant matter is analogous to *Metropolitan Edison Company*, wherein the conduct of the water authority's employees created the dangerous condition.[6] The

---

[6] Met-Ed argues that *Metropolitan Edison Company* is distinguishable from the instant matter, because the water authority's employees in *Metropolitan Edison Company* directly caused the damage to Met-Ed's utility line. Specifically, Met-Ed contends that although an agency may not be liable for damage it causes directly, an agency may, through its negligent conduct, create a dangerous condition of the property that later causes damage. Met-Ed cites *DeTurk v. South Lebanon Township*, 542 A.2d 213 (Pa. Cmwlth. 1988), in support of this proposition. In *DeTurk*, South Lebanon Township and South Lebanon Township Authority (collectively, township) hired a contractor to assist in the construction of a water collection system. During the course of this construction, the contractor added a layer of asphalt to an adjacent alley, which raised the road surface by four inches. After the project was completed, the area experienced heavy rain, and the water ran off the road surface and into Glenn DeTurk's (DeTurk) garage. In attempting to remove plywood sheets from his garage, DeTurk slipped and fell. DeTurk filed a complaint against the township for negligent construction of the water collection system, and the township filed a motion for summary judgment, asserting that it was immune from liability. The Court of Common Pleas of Lebanon County granted the township's motion, explaining that there was insufficient evidence to show that the township had notice of a dangerous condition. DeTurk appealed to this Court, which reversed. We concluded that "the construction of the swale by the [t]ownship . . . place[d] them in the exception from immunity under Section 8542(b)(5) [of the Act]." *DeTurk*, 542 A.2d at 215. Further, evidence that the water collection system was constructed to alleviate known problems concerning water run-off and evidence that the contractor damaged the swale during paving was sufficient to show that the township had constructive notice of the dangerous condition of the water collection system.

The instant matter is distinguishable from *DeTurk*. In *DeTurk*, the dangerous condition derived from the road surface. As noted above, the dangerous condition here arose from **(Footnote continued on next page…)**

6

exception from immunity in Section 8542(b)(5) of the Act does not apply in this case, and Reading, therefore, is immune from liability.[7]

Accordingly, we reverse the trial court's order.

_____
P. KEVIN BROBSON, Judge

_____
**(continued…)**

Reading's excavation activities at the site—namely, removal of soil from beneath Met-Ed's duct bank, failure to use proper shoring to stabilize the duct bank, and failure to promptly backfill the excavated hole.

[7] Because we reverse the trial court's order, we need not address Reading's additional argument concerning the policy implications of affirming the trial court's order.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Metropolitan Edison Company    :
           :
       v.            :   No. 2188 C.D. 2014
           :
City of Reading,          :
          Appellant   :

# O R D E R

AND NOW, this 15th day of October, 2015, the order of the Court of Common Pleas of Berks County is hereby REVERSED.

_____
P. KEVIN BROBSON, Judge