[J-128-2016][M.O. – Donohue, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| METROPOLITAN EDISON COMPANY, | : | No. 58 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court dated 10/15/15 at |
| v. | : | No. 2188 CD 2014 reversing the |
| | : | judgment entered in the Berks County |
| | : | Court of Common Pleas, Civil Division, |
| CITY OF READING, | : | dated 11/17/14, exited 11/19/14, at No. |
| | : | 10-21418 |
| Appellee | : | |
| | : | |
| | : | ARGUED: December 7, 2016 |

## DISSENTING OPINION

**CHIEF JUSTICE SAYLOR**                    **DECIDED: June 20, 2017**

I respectfully dissent as I would conclude that the damage sustained by Appellant did not result from a dangerous condition of the city's sewer facilities.

Subsection (b)(5) of the Political Subdivision Tort Claims Act reflects the utility service facilities exception to governmental immunity. *See* 42 Pa.C.S. §8542(b)(5). It states that, although a "local agency" – meaning a local government unit, *see id.* §8501 – is generally immune from liability for injuries to persons and property, *see id.* §8541, an exception exists where the damages in question are based on "dangerous conditions of" certain facilities of the local agency, such as water and sewer facilities. *Id.* §8542(b)(5), *quoted in* Majority Opinion, slip op. at 5, 11.

Here, there is no suggestion that the city's sewer lines or any other aspect of the sewer system itself constituted a dangerous condition which caused Appellant's loss.

Therefore, it seems relevant to consider whether the Legislature intended that the phrase, "dangerous condition *of* the facilities," *id.* (emphasis added), be read broadly to include items such as loose soil that are not part of the utility system, but near it.

In *Metropolitan Edison Co. v. Reading Area Water Authority*, 937 A.2d 1173 (Pa. Cmwlth. 2007), the intermediate court held that the (b)(5) exception was inapplicable – and thus, that the water authority was immune from liability – where the authority's employees damaged a utility line during the course of excavations aimed at reaching an underground water line. The court explained that, "in order for the utility service facilities exception to apply, the allegedly dangerous condition must have derived or originated from, or had its source as the local agency's realty." *Id.* at 1175. Relying on *Reading Area Water Authority*, the Commonwealth Court in the present case emphasized that the dangerous condition consisted of the instability of the soil located underneath Appellant's duct bank and, as such, it "did not originate from Reading's facilities." *Metro. Edison Co. v. City of Reading*, 125 A.3d 499, 503 (Pa. Cmwlth. 2015) (internal citation, quotation marks, and brackets omitted).

As is often the case with statutory language, the (b)(5) exception does not spell out with precision when damage can be viewed as having arisen from a dangerous condition "of" a municipality's facilities. Still, the statute is not wholly without guidance, as the exception does not apply to government "facilities" generally. The phrase chosen by the General Assembly, as it pertains here, only implicates a local agency's *sewer* facilities. To my mind this, at a minimum, gives rise to uncertainty as to whether the scope of the exception was meant to include soil in a utility trench where sewer facilities are placed. Such uncertainty, in turn, implicates the rule that reviewing courts are to apply a narrow construction to immunity waivers. *See Dorsey v. Redman*, 626 Pa. 195, 209-10, 96 A.3d 332, 341 (2014); *Jones v. SEPTA*, 565 Pa. 211, 220, 772 A.2d 435,

440 (2001) (citing *Finn v. City of Phila.*, 541 Pa. 596, 601, 664 A.2d 1342, 1344 (1995) ("Because the legislature's intent was to provide immunities [to political subdivisions], we have held that the exceptions to immunity must be strictly construed.")).

With the strict-construction mandate in mind, I find resonance in the intermediate court's observation that the dangerous condition was not part of the city's actual sewer line. As noted, the court relied on *Reading Area Water Authority*'s explanation that, to fall within the exception, the dangerous condition must have derived or originated from, or had its source as, the local agency's utility line.[1]

That position has been endorsed by this Court with regard to other exceptions, such as the real estate exception. In *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307

---

[1] The majority does not address this contention because, in its view, the city fails to raise it. *See* Majority Opinion, *slip op.* at 14 n.6. As I read the city's brief, however, the assertion is included, albeit perhaps inartfully. The city stresses the need for a narrow construction and, in this regard, emphasizes subsection (b)(5)'s use of the phrase, "A **dangerous condition *of* the facilities**." Brief for Appellee at 9 (quoting 42 Pa.C.S. §8542(b)(5)) (bolding and italics in original). The city then highlights the intermediate court's reliance on *Reading Area Water Authority* – specifically, that decision's explanation that the city was immunized because, "in order for the utility service facilities exception to apply, the allegedly dangerous condition must have *derived* or *originated from*, or *had its source as* the local agency's realty." *Id.* at 11 (quoting *Reading Area Water Authority*, 937 A.2d at 1175) (italics in original, bolding omitted); *see also* Majority Opinion, *slip op.* at 9 (summarizing the city's arguments). Finally – and as recognized by the majority, *see* Majority Opinion, *slip op.* at 14 n.6 – the city urges this Court to disavow *Miller v. PennDOT*, 690 A.2d 818 (Pa. Cmwlth. 1997). It explains that *Miller* "injected confusing language into the fabric of Pennsylvania's Tort Claims Act case law, holding that the [utility service facilities] exception applies 'not only to the water pipes but also to the strip of land which the [water a]uthority disturbed to repair its water pipe.'" Brief for Appellee at 12 (quoting *Miller*, 690 A.2d at 820). In my view, this advocacy (which also appeared in the city's Commonwealth Court brief) preserves the issue.

To the extent the majority credits the city with suggesting that its excavation activity, rather than the city's realty, was the cause of the damage, *see* Majority Opinion, *slip op.* at 9, I find that such an argument is interrelated with the salient position that a dangerous condition near the sewer line, and not of the sewer line, caused the harm.

(1989), for example, the plaintiff alleged that the negligent failure to place a guardrail along the edge of a road next to a strip mine constituted a dangerous condition of the Commonwealth's property. This Court disagreed, emphasizing that the dangerous condition did not have its source in the Commonwealth's land itself. *See id.* at 434, 562 A.2d at 312.[2] In this respect, the Court observed, when viewing the statutory language – "[a] dangerous condition of Commonwealth agency real estate and sidewalks" 42 Pa.C.S. §8522(b)(4) – the crucial word is "of." *See Snyder*, 522 Pa. at 434 n.5, 562 A.2d at 312 n.5. Therefore, the Court explained that to invoke the exception a plaintiff must demonstrate that a "defect *of the land itself* cause[d]" the injury in question. *Id.* at 434-35, 562 A.2d at 312 (emphasis added); *see also Finn*, 541 Pa. at 605, 664 A.2d at 1346 (in the context of a sidewalks-exception claim, reviewing prior decisions and concluding that "[t]he common theme of all these cases is that liability depends . . . on the legal determination that an injury was caused by a condition of government realty itself, deriving, originating from, or having the realty as its source").[3]

---

[2] Although *Snyder* involved the sovereign immunity of the Commonwealth, the sovereign and governmental immunity statutes "are to be interpreted consistently, as they deal with indistinguishable subject matter." *Finn*, 541 Pa. at 601, 664 A.2d at 1344.

[3] In *Jones*, this Court re-affirmed the analysis set forth in *Snyder*. Thus, the *Jones* Court reiterated that, in light of the "dangerous condition *of*" phraseology, the government-owned realty in question must itself be the source of the injury. *Jones*, 565 Pa. at 226, 772 A.2d at 444 (quoting 42 Pa.C.S. §8542(b)(7)) (emphasis added). Other jurisdictions have reached similar interpretations of similarly worded statutes. *See, e.g.*, *Wade v. Dep't of Corr.*, 483 N.W.2d 26, 30 (Mich. 1992); *Stevens v. Salt Lake Cnty.*, 478 P.2d 496, 499 (Utah 1970). While the exception may be broad enough to include situations in which the physical condition of the facility is not dangerous, *see, e.g.*, *Warden v. City of L.A.*, 530 P.2d 175 (Cal. 1975) (finding that the location of a sewer outfall pipe just beneath the water's surface in an area frequented by boats constituted a dangerous condition), I would not construe it to subsume dangerous conditions of the soil above a utility line, even where the condition stems from excavation and backfilling activities undertaken by the municipality to access that utility line.

Applying these established principles, the damage incurred in the present case arose from the loose soil underneath the duct banks and, as such, it did not amount to a dangerous condition "of" the city's sewer system for purposes of the (b)(5) exception. This circumstance, moreover, distinguishes the present case from the situation in *Gall by Gall v. Allegheny County Health Department*, 521 Pa. 68, 555 A.2d 786 (1989), from which the majority draws support. *See* Majority Opinion, *slip op.* at 16-17. In *Gall*, the danger stemmed from contaminated water delivered by the water authority's facilities. The plaintiffs alleged that the contamination arose because the authority had negligently allowed water retaining systems and water piping to become infested with a parasite. *See Gall*, 521 Pa. at 70, 555 A.2d at 787. The plaintiffs further averred that the authority had failed to: (a) utilize scientific developments to treat and cure the water; (b) properly filter the water flowing through the line; and (c) take frequent and necessary water samples to determine the existence or non-existence of the parasite. *See id.* It is thus apparent that in *Gall*, the plaintiffs' allegations related to aspects "of" the utility system much more so than in the present matter.

In brief, I conclude that Appellant's injury did not have as its source the city's sewer facility itself. Thus, any negligence associated with the city's failure to shore up the soil upon notice that the conduit banks were in danger should not give rise to liability on the part of the city. Although this result would allow the city to escape liability even where its negligence causes harm, that is the essence of governmental immunity as established by the legislative branch of our government.

Accordingly, I would affirm the order of the Commonwealth Court.